**John Frederick LANG**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

**Civ. No. 71-78-M.**

United States District Court,
D. Maryland.

July 7, 1972.

Louis J. Weinkam, Towson, Md., for plaintiff.

George Beall, U. S. Atty., and Leonard M. Linton, Jr., Asst. U. S. Atty., Baltimore, Md., for defendant.

JAMES R. MILLER, Jr., District Judge.

*Memorandum Opinion and Order*

Plaintiff filed for disability insurance benefits under the Social Security Act, 42 U.S.C. § 416(i) and § 423, alleging a disability resulting from a mental disorder. The hearing examiner's denial of plaintiff's claim on October 19, 1970 became the final decision of the Secretary in this case when the Appeals Council denied plaintiff's request for review on December 11, 1970. This suit seeks review of the Secretary's decision as provided by 42 U.S.C. § 405(g). The defendant has moved for summary judgment.

Plaintiff was convicted in the Baltimore City Criminal Court of assault with intent to murder and was sentenced to 10 years imprisonment on July 27, 1968. Under the provisions of art. 31B, § 1 et seq., Md.Ann.Code (1971 Repl. Vol.), the plaintiff was found to be a "defective delinquent" by a Maryland court of competent jurisdiction on September 26, 1969, and transferred to Patuxent Institution for confinement. Patuxent is a medium security institution established for the treatment of recidivists whose criminal activities are occasioned, at least in part, by mental disorders. Tippett v. Maryland, 436 F.2d 1153 (4th Cir.), cert. granted sub nom.

Murel v. Baltimore City Criminal Court, 404 U.S. 999, 92 S.Ct. 567, 30 L.Ed.2d 552 (1971), cert. dismissed as improvidently granted, 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972). Commitment to Patuxent must be subsequent to a criminal conviction but the commitment proceeding is civil in nature. Plaintiff has been released from Patuxent, but that fact does not affect his claim because he is trying to establish his period of incarceration as his period of disability.

On January 6, 1970 the plaintiff filed with the Secretary an application for disability insurance benefits alleging therein that he was a "defective delinquent" and that he was unable to work due to his confinement in Patuxent Institution. In his request for reconsideration of the initial decision of the Division of Evaluation and Authorization of the Bureau of Disability Insurance, plaintiff stated in part:

"My civil confinement to Patuxent Institution, in and by itself, should make me eligible for such benefits since it absolutely stops me from making any effort to obtain or keep any gainful employment." (tr. 63).

Art. 31B, § 5, Md.Ann.Code (1971 Repl.Vol.), defines "defective delinquent" as

". . . an individual who, by the demonstration of persistent aggravated antisocial or criminal behavior, evidences a propensity toward criminal activity, and who is found to have either such intellectual deficiency or emotional unbalance, or both, as to clearly demonstrate an actual danger to society so as to require such confinement and treatment, when appropriate, as may make it reasonably safe for society to terminate the confinement and treatment."

Plaintiff argued to the hearing examiner that he was committed to Patuxent as a result of being diagnosed as having a sociopathic personality and that a sociopathic impairment "directly affects the ability to think, reason, understand and the engagement in regular daily activities." (tr. 50–51, 87–88).

At plaintiff's request a hearing was held at Patuxent on August 25, 1970, at which the hearing examiner heard from the plaintiff and an employee of Patuxent Institution. After reviewing the evidence and certain work and psychiatric records relating to the plaintiff, the hearing examiner denied the application primarily on the ground that the plaintiff had not sustained his burden of proof and that the evidence

". . . does not show that the claimant had a sufficiently severe mental or physical impairment which would have prevented him from working for a period of twelve consecutive months at a time when he last met the earning requirement if he had not been confined to the Institution by court order." (tr. 20).

The only issue before this court is whether the final decision of the Secretary is supported by substantial evidence. 42 U.S.C. § 405(g). Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971).

To qualify for disability insurance benefits and a period of disability under § 223 and § 216(i) of the Social Security Act, 42 U.S.C. § 423 and § 416(i), an individual must meet the insured status requirements of these sections, be under age 65, file an application for disability insurance benefits, and be under a "disability" as defined in the Act.

The term "disability" is defined in section 223 to mean:

"(d) (1) * * *

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *

"(B) * * *

"(2) For purposes of paragraph (1) (A)—

"(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

"(B) * * *

"(3) For purposes of this subsection, a 'physical impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

"(4) * * *

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

The defendant agrees that plaintiff had worked a sufficient number of quarters to meet the insured status requirements of the Act.

The plaintiff was born on December 8, 1946 and testified that he finished the 11th grade in high school. He received a high school equivilency diploma at Patuxent. He worked as an electrician's helper on the docks in Baltimore and worked his way up to becoming a first-class handyman immediately prior to his Patuxent confinement. He earned $2.90 per hour as a member of the shipbuilders union. At Patuxent the plaintiff worked eight hours a day keeping records as the clothing room clerk. He learned to type during an earlier incarceration and took a course at Patuxent to improve his ability. During his stay at Patuxent, for four hours per evening, the plaintiff voluntarily engaged in the very commendable activity of reading books onto tape for the blind.

Plaintiff has previously been convicted of burglary in 1963 and assault and robbery in 1965.

Plaintiff's psychiatric examination at Patuxent showed a well-developed, well-nourished young man who looked his stated chronological age. He was guarded and defensive in his statements and showed no feeling of guilt or remorse for his past offenses. The plaintiff had no insight whatsoever into his difficulties, and he was action oriented, impulsive, immature, hostile, bitter, and resentful of any kind of authority, control or supervision. The Institution staff report concluded that the plaintiff displayed no psychotic distortion of perception and thoughts. In view of these findings, three physicians and a psychologist shared the opinion, in their report of May 21, 1968, that the plaintiff met the criteria for "defective delinquency," and should be committed for confinement and treatment. (tr. 76).

There is no evidence that plaintiff was ever diagnosed by the Patuxent staff as a "sociopathic personality," as alleged in plaintiff's complaint. He was found, however, to be a defective delinquent as defined in art. 31B, § 5, *supra*.

Plaintiff argues that his commitment and confinement as a "defective delinquent" constitute sufficient evidence of a disability by reason of a mental impairment on the theory that his confinement resulting from his defective delinquent status prevents his being engaged in any substantial gainful activity.

▇▇ The burden of proof rests upon the plaintiff to establish his entitlement to disability insurance benefits under the Social Security Act. Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965).

The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla but less than a preponderance and must be based on the record as a whole. Vitek v. Finch, *supra;* Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Celebrezze v. Bolas, 316 F. 2d 498 (8th Cir. 1963).

The hearing examiner's decision was guided by the Secretary's Regulations promulgated under the authority of Section 205(a) of the Social Security Act. Evaluation of disability is discussed in 20 C.F.R. § 404.1502, which specifies that primary consideration must be given to the severity of the claimant's impairment. Section 404.1502 provides in pertinent part:

"Consideration is also given to such factors as the individual's age, education and work experience. Medical considerations alone can justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities. . . ."

To be considered disabled, the Regulation goes on to state, it must be established that the physical or mental impairments are of such severity (i. e. result in such lack of ability to perform significant functions as moving about, handling objects, hearing, speaking, reasoning, and understanding) that the individual is not only unable to do the previous work, or work commensurate with previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

The hearing examiner in reaching his decision also relied upon the report, dated May 19, 1970, of a psychiatric consultant who was engaged to interview the plaintiff by the Bureau of Disability Insurance. His report states:

"There is no evidence that this man has ever had any psychiatric impairment which would prevent his working. His application is based upon the fact of his confinement to a disciplinary institution as a result of an antisocial act. He was working steadily until the day of his arrest. He appears to have been working steadily in the institution. There is no evidence of any limitation of intelligence. He has never shown psychotic disorganization. He would appear to carry on a considerable range of activities. There is no suggestion that he shows deterioration of personal habits. There is no evidence of impairment in his abilities to relate to other people. He does not meet or equal our listings and there is no evidence of a psychiatric impairment which would prevent his working. He is in fact doing so within the institution." (tr. 79).

The hearing examiner found that the plaintiff's mental disorder was not of such severity that it would prevent him, absent incarceration, from engaging in substantial gainful activity. The hearing examiner found that the plaintiff was mentally and physically capable of working either as an electrician or a typist-clerk in the metropolitan area in which he formerly lived or in the national economy. That conclusion is substantially supported by the evidence.

The plaintiff argues that Marion v. Gardner, 359 F.2d 175 (8th Cir. 1966), is controlling in the present case. The court in *Marion* found a disability existed in an individual suffering from medically diagnosed *uncontrollable* sexual urges which had resulted in his confinement under the Minnesota Psychopathic Personality Act, Minn.Stat.Ann. § 526.-09–526.11 (1947). The defendant urges that Pierce v. Gardner, 388 F.2d 846 (7th Cir. 1967), cert. denied, 393 U.S. 885, 89 S.Ct. 197, 21 L.Ed.2d 162 (1968), is more properly the benchmark in the instant case. In *Pierce* the court found no disability to exist where the evidence was that the claimant was not

mentally ill or deficient but rather had a "sociopathic personality with pedophilic tendencies" which resulted in his *propensity* for the commission of crimes.

 In the instant case plaintiff has been diagnosed as an immature, hostile person but without psychosis or organic brain symptomotology. (tr. 75–76, 78). The medical and other evidence does not compel a finding that his antisocial actions were compulsive and uncontrollable. Although the psychiatric report of the Patuxent staff, dated May 21, 1968, does state that he had "very little control" over his impulses, this statement must be read in its context that he was an immature, hostile person who resented authority, but who was well oriented in all three spheres and who failed to show any psychotic distortion of perception and thoughts. (tr. 76). Plaintiff worked as a clerk-typist in Patuxent which correlated with his status of having maximum privileges within the framework of the institution. Plaintiff behaved well at Patuxent and related well to others, as is positively shown by his volunteer work as a "reader." There is sufficient evidence to support the hearing examiner's conclusion that the plaintiff was not under a disability as defined by 42 U.S.C. § 423 and the regulations thereunder. As this court recently stated in Waldron v. Secretary of Health, Education and Welfare, 344 F. Supp. 1176, 1180 (D.Md.1972):

> "There is an important difference between an impairment which results in an inability to perform the physical or mental functions necessary to engage in substantial gainful activity on the one hand and antisocial behavior which results in confinement on the other. In the latter case, it is the confinement rather than the impairment which precludes the individual from engaging in substantial gainful activity. The Act does not intend for simple incarceration to result in a finding of disability. Pierce v. Gardner, *supra* [388 F.2d] at 848, Marion v. Gardner, *supra* [359 F.2d] at 182; Hunter v. Secretary, H.E.W., 284 F. Supp. 524 at 526 (E.D.Pa.1968).

> "The facts of this case bring it more within the rationale of Pierce v. Gardner than of Marion v. Gardner. Here the evidence supports the hearing examiner's decision that the plaintiff's *propensity* to commit crimes caused by an underlying personality disorder does not preclude him from engaging in substantial gainful activity. Certainly the evidence did not require the hearing examiner to find that the plaintiff had uncontrollable urges to commit crimes caused by a severe mental or personality disorder which does preclude him from engaging in substantial gainful activity."

There being substantial evidence supporting the hearing examiner's decision, the defendant's motion for summary judgment must be granted.

It is, therefore, this 7th day of July, 1972, by the United States District Court for the District of Maryland

Ordered that the defendant's motion for summary judgment be, and it is hereby, granted.