Walter B. KELBACH,
Plaintiff–Appellant,

v.

Patricia Roberts HARRIS, Secretary of Health, Education and Welfare, Defendant–Appellee.

No. 79–2085.

United States Court of Appeals, Tenth Circuit.

Argued Oct. 14, 1980.
Decided Nov. 24, 1980.

Howard P. Johnson, Salt Lake City, Utah, for plaintiff–appellant.

Lawrence J. Leigh, Asst. U. S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U. S. Atty., and James R. Holbrook, Asst. U. S. Atty., D. Utah, Salt Lake City, Utah, on the brief), for defendant–appellee.

Before SETH, Chief Judge, and BREIT-ENSTEIN and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Walter B. Kelbach (Kelbach) appeals from the final order of the District Court confirming the findings, Report and Recommendation of the Magistrate, who, in turn, confirmed the decision of the Administrative Law Judge denying Kelbach's application with the Secretary of Health, Education and Welfare for Social Security Disability Insurance benefits pursuant to 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). Our jurisdiction vests by virtue of 28 U.S.C. § 1291.

### Background

Kelbach, then age 39, filed his application with the Secretary for disability benefits on January 4, 1977, while an inmate of the Utah State Penitentiary, where, since the year 1966, he had been serving a life sentence following conviction on a two count charge of murder in the first degree. Kelbach testified at the administrative hearing that he committed the murders in a brutal and senseless manner, and that he had been in trouble with "the law" most of his life. Kelbach previously served a term in the Wisconsin State Reformatory and, prior to his incarceration in 1966 on the murder convictions, he had served a term in the Utah State Penitentiary. He was born June 25, 1938. He has a tenth grade education, some training as a printer, experience as a cook, a hydrogen–nitrogen worker in a heat treating plant, a taxicab driver, truck driver and a car salesman.

Kelbach's evidence was in large part non–medical. The first formal psychiatric reports of Kelbach are those contained in his military service record in 1960 stating that he was "unable to cope with every day changes," displayed "poor judgment" and "continuous misbehavior." He was discharged from the army as "unfit." The military psychiatric reports did not attribute any cognizable psychiatric disease to Kelbach and they determined that he was able to distinguish right from wrong and to adhere to the right. In 1965, psychiatric examinations revealed that: Kelbach had "an acting–out sociopathic personality disturbance" involving great hostility toward society and people in general; he was "amoral in general value system"; he was unwilling to learn from experience; he tended to be impulsive; he was unable to make accurate judgments; and his interpersonal relationships were distorted. Later, in 1966, Kelbach was again evaluated. He was found to be under pressure which could prompt aggressive behavior. He was diagnosed as a person of "Sociopathic personality disturbance; Dysocial or antisocial reaction–manifest by impulsivity, labile emotions, anxiety, dysphoria and acting out tendencies." Kelbach's testimony generally supported the above findings; however he attributed a good share of his problems to his use of alcohol. He concluded that he is still in the "same mess" he was in 1966; that his attitude is the same; and that if "we'd have killed the witnesses we wouldn't have got tried." [R., Vol. II, pp. 85–93].

Kelbach's claim was anchored to his contention that he had become disabled and unable to work in April of 1965 as a result of a "mental disorder manifested by extreme antisocial behavior," and that this condition commenced in April of 1965. Kelbach's application reads, in part, that he has

"worked" for the Utah State Prison commencing April, 1965, and that he "earned" less than $100 in 1976 and had also "earned" less than $100 during the current year (1977). [R., Vol. II, pp. 96–99]. Kelbach's claim listed two children under the age of 18 years who may be eligible for benefits, both of whom bear the last name of Kopitzke. [R., Vol. II, p. 98]. The record indicates that Kelbach is divorced from the natural mother of the children, and that he is under a monthly support and maintenance order of $150.00. [R., Vol. II, p. 209]. Among the contentions advanced by Kelbach was that widespread adverse publicity concerning his crimes had made him unemployable and thus disabled from gainful employment.

A prison psychologist evaluated Kelbach in January, 1977. He reviewed his prison records and interviewed Kelbach. He reported that Kelbach was free from mental illness, did not suffer disordered thinking, but did have a deeply ingrained antisocial personality. Nothing, however, indicated that Kelbach suffered mental illness or that there was evidence of psychotic behavior. [R., Vol. II pp. 117–119]. Prison psychiatrist Van O. Austin, M. D. reported on January 28, 1977, that Kelbach was not suffering from a mental illness or disorder, and that there was no evidence of disordered thinking, affect, contact with reality or organic brain damage. He stated that Kelbach's personality structure is deeply ingrained and is classically representative of the antisocial personality. [R., Vol. II, p. 116].

The Administrative Law Judge determined that Kelbach had established persistent antisocial or amoral behavior but that he had not proved a marked restriction of interest and deterioration in personal habits impairing his ability to relate to other people. He concluded that Kelbach's habitual behavior pattern culminating in murders did not alone establish the requisite disability impairment.

The United States Magistrate meticulously reviewed the evidence adduced before the ALJ. He recognized that the Secretary (HEW) is the administrative authority delegated to hear and weigh the evidence and to render findings in the decisional process, which are not to be disturbed absent an abuse of discretion. He concluded:

With the determination that the plaintiff's criminal behavior does not establish without substantial conflict a disabling mental impairment there is little substantial evidence in the record supporting the plaintiff's claim. He argues that the record shows that during periods of freedom he did not retain jobs for extended periods, and from this failure the Administrative Law Judge should have determined that his sociopathic personality deficiency prevented him from holding gainful employment and was a disabling impairment. Again, from the failure to retain employments several inferences might reasonably have been drawn. The fact finder was not compelled to accept the one inference favorable to the plaintiff's claim.

A review of the entire record, including the reports of and the plaintiff's testimony concerning the crimes committed, the behavior, and the psychiatric and psychological reports, discloses that the decision that the plaintiff had not proved all the essential criteria of the listed impairment is supported by substantial evidence. Also there is substantial evidence supporting the determination that, although the plaintiff suffers from personality and psychological disorders, he did not sustain the burden of proving either that his impairments are of such severity as to prevent him from engaging in substantial gainful employment were he free to do so, or that his impairments are responsible for or the cause of his unemployability. The plaintiff is incarcerated not because of adjudicated or because of diagnosed insanity, as in *Marion v. Gardner*, [359 F.2d 175] *Supra*, but because of criminal misconduct, not shown to have resulted from a disabling mental impairment. For these reasons it is recommended that the defendant's motion to affirm his decision be granted. [R., Vol. I, pp. 60, 61].

The District Court confirmed the findings of the Magistrate in its order of September 30, 1979, finding, upon review of the record, that the decision of the Secretary is "indeed supported by substantial evidence and should be upheld." [R., Vol. I, p. 204].

### Pertinent Statutory Provisions

42 U.S.C. § 416(i)(1)(A) defines "disability" for purposes of 42 U.S.C. § 423 (benefit payments), as ". . . inability to engage in any substantial gainful activity by determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months, . . ."

42 U.S.C. § 423(d)(1)(A) defines "disability" in the identical language above recited and further provides under § 423(d)(3) that a "physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

### Contentions on Appeal

Kelbach contends that the District Court erred in denying his disability claim inasmuch as: (1) the record contains substantial evidence that he should have been granted Social Security Disability Insurance benefits because of his proven inability to work caused by a severe case of impulsive, acting–out antisocial personality disorder, (2) there was not substantial evidence that he could regularly engage in any form of substantial gainful activity with success, and (3) improper evaluative criteria were used for this type of impairment.

### Our Disposition

#### I.

In the course of oral argument, counsel for the Secretary was asked why the Government had not challenged Kelbach's claim on the basis that his incarceration in the Utah State Penitentiary for life following conviction on a two count charge of murder in the first degree was a proper ground for denial of his disability claim inasmuch as his intentional, willful criminal acts had, for practical purposes, eliminated any possibility that Kelbach could engage in any gainful work. The response was that such a position should perhaps be advanced and that it does have merit. We were extremely puzzled why the Government did not advance the argument. We requested that both parties file supplemental briefs on "the issue of what effect, if any, the claimant's status as a prisoner has on his claim for benefits."

The Magistrate observed, in relation to the aspect of Kelbach's incarceration:

> The plaintiff's incarceration makes him unemployable, but this fact alone does not, of course, establish a qualifying disability under the Act. Equally true, however, the fact of incarceration is not a disqualifying circumstance if the incarceration has resulted from a mental disturbance that satisfies the requirements for disability set forth in the Social Security Act. The language of then Circuit Judge Blackmun in *Marion v. Gardner*, 359 F.2d 175 (8th Cir. 1966) pinpoints the proper inquiry:

> "... We recognize, too, that imprisonment or enforced hospital confinement ordinarily renders one unable to pursue his occupation and to earn a livelihood. We must emphasize however, that we are not holding the confinement imposed by court order automatically equates with statutory disability. If this were so, incarceration for crime would appear to produce and require a like result. *Clearly, court–imposed hospitalization or incarceration is not, of itself, the kind of disability contemplated by the statute. If, however, the confinement is occasioned 'by reason of any medically determinable physical or mental impairment', etc., there is no reason why the statutory disability may not be established if the other prescribed conditions are met.*" [Emphasis supplied].

[R., Vol. I, pp. 136, 137].

We are in full agreement with the above language. However, proof of the existence of the statutory disability attendant upon one incarcerated, such as Kelbach, does not resolve the issue of entitlement. We hold that examination of the purposes and objectives of the Act forecloses the Kelbach claim, even should the evidence establish a "medically determinable physical or mental impairment" preventing him from engaging "in any substantial gainful activity."

The Supreme Court has recognized that the benefits of the Act were intended to provide the claimant and those dependent upon him, as the wage earner, with *protection against the economic hardship occasioned by the loss of wages resulting by reason of death, disability or retirement of the wage earner. Califano v. Boles*, 443 U.S. 282, 99 S.Ct. 2767, 61 L.Ed.2d 241 (1980); *Califano v. Jobst*, 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977); *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); *Matthews v. DeCastro*, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976). In *Califano v. Boles, supra*, the Court identified the objectives of the Act:

> The SSA and its amendments are the product of hard choices and countervailing pressures. The desire to alleviate hardship wherever it is found is tempered by the concern that the social security system in this country remain a contributory insurance plan and not become a general welfare program. General welfare objectives are addressed through public assistance legislation. In light of the limited resources of the insurance fund, any expansion of the class of beneficiaries invariably poses the prospect of reduced benefits to individual claimants. 443 U.S. at p. 296, 99 S.Ct. at 2776.

■ The Act recognizes a distinct relationship between a claimant's disability and his engagement in substantial work activity with attendant earnings therefrom, for purposes of entitlement. In *Wilson v. Richardson*, 455 F.2d 304 (4th Cir. 1972), the Court in addressing a § 423(d)(1)(A) disability claim, observed in relevant part:

> Section 423(d)(4) authorizes the Secretary to prescribe by regulations

criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity.

The Section goes on to provide that, notwithstanding the usual tests for disability (the medical evidence and the claimant's age, education and work experience), an individual whose services or earnings exceed the standard to be set by the Secretary should be found not to be disabled.

> Pursuant to the authority granted him in section 423(d)(4) the Secretary promulgated a Regulation for the evaluation of earnings from work: 20 C.F.R. § 404.-1534. Section 404.1534(b) provides that

> An individual's earnings from work activities averaging in excess of $140 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity unless there is affirmative evidence that such work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity under the criteria in §§ 404.1532 and 404.1533 and paragraph (a) of this section. [Footnotes omitted].

455 F.2d at p. 305.

■ The general purpose of the Social Security Act, 42 U.S.C. §§ 301, *et seq.*, is to protect workers and their dependents from the risk of loss of income due to the insured's old age, death, or disability. *Dvorak v. Celebrezze*, 345 F.2d 894 (10th Cir. 1965); *Delno v. Celebrezze*, 347 F.2d 159 (9th Cir. 1965). Thus, entitlement to benefits has been based upon the receipt of income from labor which old age, death, or disability would interrupt. *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). The *Flemming* Court rejected the contention that one could accrue property rights under the Social Security system:

> The "right" to Social Security benefits is in one sense "earned", for the entire scheme rests on the legislative judgment that those who in their productive years

were functioning members of the economy may justly call upon the economy, in their later years, for protection from "the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near." *Helvering v. Davis* [301 U.S. 619], *supra*, at 641, [57 S.Ct. at 909].

363 U.S. at p. 610, 80 S.Ct. at p. 1372.

■ With the above standards guiding us, it is clear that unemployment is a prerequisite to a disability claim. In *Valentine v. Richardson*, 468 F.2d 588 (10th Cir. 1972), we said:

In order to qualify for [disability] benefits, the claimants must establish that they are suffering from an impairment of such severity as to be unable to perform their former work considering their age, education and work experience *or* to engage in any other substantial gainful work which exists in the national economy.

468 F.2d at p. 589.

■ Thus, before a claim for disability can be denied on the ground that the claimant can perform substantial gainful activity, the Secretary must bear the burden of proving, by substantial evidence, that employment opportunities are available to the claimant and that the claimant is capable of performing them.

In *Keating v. Secretary of Health, Education and Welfare of United States*, 468 F.2d 788 (10th Cir. 1972), we held that the evidence supported the Secretary's finding that Keating's disability claim should be denied in that the evidence supported the finding that he could return to his prior work. Keating's challenge, on review, was two–fold. He contended that the evidence did not support the Secretary's finding that he was not disabled and, further, that the Secretary failed to carry the burden of establishing that *jobs* were available that he could perform in the area where he lived. Addressing these contentions, this Court said:

Keating had the burden to establish his inability to perform his previous work as a salesman before the burden shifted to the Secretary to show the reasonable availability of such suitable positions in the geographic area where he lives. *Gardner v. Brian*, 369 F.2d 443 (10th Cir. 1966); *Kirby v. Gardner*, 369 F.2d 302 (10th Cir. 1966). Keating testified that the only work he could do was supervising the work of his sons in exterminating houses. The medical evidence established that his ankle prevented him from working or standing for a period of time without pain. The Hearing Examiner held that this evidence established that Keating could perform sedentary and light physical work, including many jobs in his previous work as a salesman. Keating did not meet his burden of establishing that he was unable to work as a salesman. Accordingly, the burden did not shift to the Secretary to establish the availability of jobs in the area which he would perform. His impairments were not of such a severity as to prevent him from doing his previous work or any other substantial gainful work considering his age, education, and work experience.

468 F.2d at pp. 790, 791.

*See also*: Annotation 22 A.L.R.3d 440, § 3, pp. 446–452, and cases cited. The crux of these decisions is predicated on the fact that the Social Security Act was not intended to furnish relief from the privation resulting from lack of *employment* opportunities in general, even where the personal physical or mental affliction is aggravated; rather, the question is what *employment opportunities* are available to a person who can do only that which the claimant can do. This must be resolved by the Secretary before denying disability benefits to a claimant on the ground that he can engage in substantial gainful activity.

Although Kelbach's claim does include two dependent children, there can be no "hardship" occasioned to him personally by loss of wages attributed to his claimed disability. Proof of the disability is, of course, geared to the inability of the claimant to return to his former work or engage in other gainful activity. Kelbach's claim is adequate proof that he has not engaged in

"substantial gainful employment." He earned less than $100 per annum for the two years reported on his claim. Further, there is no showing that Kelbach has participated in any rehabilitation program with this goal in mind. Even had he done so, it is inconceivable that Kelbach would be released from confinement given the brutal, cold blooded character of the crimes for which he is confined.

■■■ We believe that even should Kelbach prove the requisite *disability*, still he is not entitled to the benefits of the Act simply because he is not in need. The Act was never intended to reach those in Kelbach's station. He is incarcerated for life in the Utah State Penitentiary. There is nothing in this record reflecting that Kelbach is in need of any assistance in order to satisfy his basic requirements of subsistence. This obligation has been assumed by the State of Utah by reason of Kelbach's imprisonment. Furthermore, the record is barren of any evidence that Kelbach could obtain "substantial gainful employment", rehabilitative or otherwise, as defined in the Social Security Act while confined in prison. In light of the nature of Kelbach's incarceration, no inquiry beyond the physical environs of the Utah State Penitentiary is relevant. Thus, there is no practical need for compliance with the burden cast upon the Secretary (assuming prior proof of the disability) to show the existence of employment opportunities in the general area where Kelbach "resides". *Trujillo v. Richardson*, 429 F.2d 1149 (10th Cir. 1970).

■■■ The Kelbach claim, in our view, is further vulnerable in the true, objective sense of the Act's remedial purpose and design. The Eighth Amendment of the United States Constitution protecting against the imposition of cruel and unusual punishment has been interpreted to obligate the states to furnish their prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care and personal safety. *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980); *Battle v. Anderson*, 564 F.2d 388 (10th Cir. 1977); *Newman v. Alabama*, 559 F.2d 283 (5th Cir. 1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978). Nothing in this record indicates that Kelbach's condition of incarceration has failed to meet these standards of reasonableness. Accordingly, Kelbach is not confronted with a "haunting fear" of the "rigors of the poor house" or, for that matter, any other fear involving privation of daily sustenance which attaches to those claimants who are not wards of the state. Kelbach's needs are provided for entirely and completely by the State of Utah and its taxpayers.

We thus conclude that one in the status and station of life of Kelbach, an inmate of the Utah State Penitentiary serving a life sentence on two counts of murder in the first degree, is not entitled to the Social Security Disability Benefits claimed pursuant to §§ 416(i)(1)(A) and 423(d)(1)(A). To conclude otherwise would, in our view, result in an unwarranted windfall or gratuity to Kelbach at the expense of those who have "earned" the benefits by virtue of contributions to the fund during their many years of productive work and who are not protected against the "rigors of the poor house" by reason of incarceration for criminal conduct.[1]

---

1. The Government's supplemental brief refers us to the October 25, 1980 enactment of Pub.L. 96–473 relating to specific limitations placed on inmates of penal institutions in relation to receipt of Title II disability benefits, which, if established, are payable on or after October 1, 1980. Nothing therein alters our views expressed in Part I in relation to Kelbach's claim. The Act does, however, permit payments of Title II disability benefits to an incarcerated felon under certain circumstances. Further, it does provide protection for qualified family members (dependents) of the incarcerated disabled claimant.

The pertinent provisions of the October 25, 1980, enactment relating to entitlement of benefits by disabled prisoners read:

Sec. 5 (n)(1) Section 223(d) of the Social Security Act is amended by adding at the end thereof the following new paragraph:

"(6)(A) Notwithstanding any other provision of this title, any physical or mental impairment which arises in connection with the commission by an individual (after the date of the enactment of this paragraph) of an

## II.

We hold, alternatively, that the record contains substantial evidence in support of the Secretary's findings that Kelbach has failed to establish the requisite disability for entitlement to benefits under 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A).

■ The plain, unambiguous language of the Act requires the claimant to prove by competent evidence that his or her impairments, physical or mental, are of such severity that he or she is prevented from engaging in any substantial work. *Bradley v. Califano*, 573 F.2d 28 (10th Cir. 1978); *Keating v. Secretary of Health, Education and Welfare of United States, supra; Valentine v. Richardson, supra; Trujillo v. Richardson*, 429 F.2d 1149 (10th Cir. 1970); *Dvorak v. Celebrezze, supra.*

■ Judicial review under 42 U.S.C. § 405(g) is limited to the inquiry of whether there is substantial evidence in the record as a whole to support the findings of the Secretary. *Hedge v. Richardson*, 458 F.2d 1065 (10th Cir. 1972). Concisely, this record establishes that although Kelbach demonstrated habitual antisocial behavior, he did not prove the elements of "marked restriction of daily activities", "constriction of interests", "deterioration in personal habits", or "impaired ability to relate" arising from the claimed mental impairment. Thus, we agree that the record supports the findings that Kelbach's personality and psychological

---

offense which constitutes a felony under applicable law and for which such individual is subsequently convicted, or which is aggravated in connection with such an offense (but only to the extent so aggravated), shall not be considered in determining whether an individual is under a disability.

"(B) Notwithstanding any other provision of this title, any physical or mental impairment which arises in connection with an individual's confinement in a jail, prison, or other penal institution or correctional facility pursuant to such individual's conviction of an offense (committed after the date of the enactment of this paragraph) constituting a felony under applicable law, or which is aggravated in connection with such a confinement (but only to the extent so aggravated), shall not be considered in determining whether such individual is under a disability for purposes of benefits payable for any month during which such individual is so confined.".

(2) The third sentence of section 216(i)(1) of such Act is amended by striking out "and (5)" and inserting in lieu thereof "(b), and (6)."

(b) Section 202(d)(7)(A) of such Act is amended by adding at the end thereof the following: "An individual shall not be considered a 'fulltime student' for the purpose of this section while that individual is confined in a jail, prison, or other penal institution or correctional facility, pursuant to his conviction of an offense (committed after the date of the enactment of this paragraph) which constituted a felony under applicable law."

(c) Section 228 of such Act is amended by adding at the end thereof the following new subsection:

"Suspension of Benefits for Inmates of Penal Institutions

"(f)(1) Notwithstanding any other provision of this title, no monthly benefits shall be paid under this section, or under section 202(d) by reason of being under a disability, to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility, pursuant to his conviction of an offense which constituted a felony under applicable law, unless such individual is actively and satisfactorily participating in a rehabilitation program which has been specifically approved for such individual by a court of law and, as determined by the Secretary, is expected to result in such individual being able to engage in substantial gainful activity upon release and within a reasonable time.

"(2) Benefits which would be payable to any individual (other than a confined individual to whom benefits are not payable by reason of paragraph (1)) under this title on the basis of the wages and self employment income of such a confined individual but for the provisions of paragraph (1), shall be payable as though such confined individual were receiving such benefits under this section."

(d) The amendments made by this section shall be effective with respect to benefits payable for months beginning on or after October 1, 1980.

The amendments do set forth certain conditions whereby disability benefits may be paid to incarcerated felons who have not attained age 65 and who meet the disability criteria defined in § 423, *supra*. The exceptions apply to those incarcerated felons who are "... *actively and satisfactorily participating in a rehabilitation program which has been specifically approved for such individual by a court of law and, as determined by the Secretary, is expected to result in such individual being able to engage in substantial gainful activity upon release and within a reasonable time.*" [Emphasis supplied].

disorders are not impairments of such severity as to prevent him from engaging in substantial gainful employment were he free to do so, or that his impairments are responsible for or the cause of his unemployability. [R., Vol. I, pp. 60, 61]. One cannot establish entitlement to disability benefits by proving that he has committed antisocial crimes resulting in his incarceration in prison. *Bertram v. Secretary of Health, Education, and Welfare*, 385 F.Supp. 755 (E.D.Wisc.1974). This view has been fully adopted in Pub.L. 96–473, *supra.* A claimant so imprisoned must prove that his mental condition and antisocial behavior are the disabling factors preventing him from performing any substantial gainful employment. *Nichols v. Secretary, Department of Health, Education and Welfare*, 436 F.Supp. 1340 (E.D.Wisc.1977). This view, too, has been clearly incorporated in Pub.L. 96–473, *supra.*

In light of Kelbach's reliance on *Marion v. Gardner, supra,* we conclude with this language from *Pierce v. Gardner*, 388 F.2d 846 (7th Cir. 1967), *cert. denied*, 393 U.S. 885, 89 S.Ct. 197, 21 L.Ed.2d 162 (1968), which we believe pertinent:

> We are cognizant of the decision of the Eighth Circuit in *Marion v. Gardner*, 359 F.2d 175, but we are of the opinion that the facts there involved serve to distinguish it from the instant case. In *Marion* the applicant–ward stood committed indefinitely under the Minnesota Psychopathic Personality Act which the Supreme Court of Minnesota had characterized (*State ex rel. Pearson v. Probate Court*, 205 Minn. 545, 287 N.W. 297) as "providing for the care and commitment of persons having uncontrollable and insane impulses to commit sexual offenses" and as "treat[ing] them as insane". The applicant had been adjudicated to be a "psychopathic personality" on the basis of medical findings. This occurred in 1962. Previously, in 1955, he had been adjudicated "mentally ill" and committed to a State mental hospital–to which he was twice returned after releases in 1956 and 1957. In addition to being a homosexual, the applicant was also mentally ill. He

> was confined not for a criminal offense but for mental illness coupled with an utter lack of power to control his sexual impulses. Plaintiff is confined for a criminal offense–the record discloses no mental illness but only a mental or personality disorder coupled with a propensity (not uncontrollable impulse) to the commission of sex offenses.

388 F.2d at p. 848.

WE AFFIRM.