Bruce PIERCE, Plaintiff-Appellant,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 16254.

United States Court of Appeals Seventh Circuit.

Nov. 14, 1967.

Reconsideration Denied Dec. 27, 1967.

Bruce Pierce, for appellant.

Carl W. Feickert, U. S. Atty., Arthur J. Ginsburg, Asst. U. S. Atty., East St. Louis, Ill., for appellee.

Before HASTINGS, Chief Judge, and CASTLE and CUMMINGS, Circuit Judges.

CASTLE, Circuit Judge.

Plaintiff-appellant, Bruce Pierce, brought this action in the District Court to review a final decision of the Secretary of Health, Education and Welfare that he was not entitled to disability insurance benefits under the Social Security Act which, in so far as is here pertinent, provides in § 216(i) (1), 42 U.S. C.A. § 416(i) (1), that:

"* * * the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months, * * *"[1]

[1] Prior to its amendment July 30, 1965, by § 303(a) (2) of Pub.L. 89–97, 79 Stat. 367 (effective as to eligibility and benefits for the period commencing with September 1965) the clause directed to the duration aspect of the disability read,

The District Court, after a review of the administrative record, granted summary judgment for the defendant-appellee and the plaintiff appealed.

The plaintiff's application for disability benefits was filed May 19, 1964, and is grounded on the claimed existence of a mental impairment which has precluded his engagement in any substantial gainful activity since October 20, 1962.

The record discloses that at the time of his application plaintiff was 49 years of age. Except for periods of incarceration in various States for sex offenses, the plaintiff, subsequent to his graduation from high school and completion of an apprenticeship in the trade, has been engaged in sheet metal layout work. While so employed in October 1962, he was arrested in Chicago, Illinois, on a similar charge, and following his plea of guilty was convicted in April 1963 of the crime of rape and sentenced to a ten year maximum term of imprisonment in the Illinois State Penitentiary. After examination at the diagnostic depot of the penitentiary system plaintiff was administratively classified as a sexually dangerous person and confined in the Psychiatric Division of the Illinois State Penitentiary, Menard, Illinois.

As defined in the statutes relating to the administration of the Illinois penitentiary system (Ill.Rev.Stat.1965, ch. 108, § 112) "sexually dangerous person" means, "any person not mentally ill or mentally retarded, suffering from a mental disorder coupled with criminal propensities to the commission of sex offenses, and who has demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children".[2]

Plaintiff contends, in substance, that his confinement in the psychiatric division with its concomitant recognition

that he has a "mental disorder" equates his condition with that of insanity and requires a conclusion that the eligibility requirements of Section 216(i) (1) are satisfied.

But there is nothing in the record which serves to indicate, much less establish, that anything except the service of his criminal sentence has prevented plaintiff from following his occupation as a sheet metal worker. He was so gainfully employed prior to the arrest preceding his conviction—and during the periods between his earlier incarcerations. The record further discloses that plaintiff has pursued a high-school refresher course while in prison, and has had some commercial training in shorthand and bookkeeping.

The only psychiatric evidence in the record consists of a June 9, 1964, professional summary relating to the plaintiff furnished by Dr. Frank M. Perez, a prison psychiatrist, and a May 25, 1965, progress report by Dr. Perez. This evidence establishes that the plaintiff remains classified as a "sexually dangerous person" as defined in the statute (Ill.Rev. Stat., ch. 108, § 112, quoted supra). The psychiatrist expresses the opinion that plaintiff "is not mentally ill or mentally deficient"; is of "average intelligence"; "is basically a sociopathic personality with pedophilic tendencies"; the probability of his social rehabilitation is "very poor"; and the doctor concludes with a recommendation that plaintiff "should remain in this prison until the conclusion of the maximum term of his sentence".

■ As pointed out in Celebrezze v. Bolas, 8 Cir., 316 F.2d 498, 501, the statutory definition of disability imposes the threefold requirement (a) that there be a medically determinable physical or mental impairment (which can be ex-

---

"which can be expected to result in death or to be of long-continued and indefinite duration". On the facts of the instant case the change effected by the amendment has no impact on the issue of disability.

2. In this connection, Ill.Rev.Stat.1965, ch. 108, § 111, provides:

"(b) Every male convict who upon examination, diagnosis and classification is found * * * to be suffering from a mental, intellectual, emotional, character, or personality disorder, if in the opinion of the Department the convict would benefit from confinement in the Psychiatric Division" shall be confined therein.

pected to result in death or meets the duration aspect set forth), (b) that there be an inability to engage in any substantial gainful activity, and (c) that the inability be by reason of the impairment.

■ Here, the plaintiff has wholly failed to meet the burden of showing that his "mental disorder" is what precludes him from engaging in substantial gainful activity. In fact, to the contrary, the record appears to indicate that the plaintiff's mental condition or disorder has not affected his ability to engage in his occupation as a sheet metal worker, albeit his propensities for the commission of sex offenses have repeatedly resulted in incarcerations which have interrupted his employment.

We are cognizant of the decision of the Eighth Circuit in Marion v. Gardner, 359 F.2d 175, but we are of the opinion that the facts there involved serve to distinguish it from the instant case. In *Marion* the applicant-ward stood committed indefinitely under the Minnesota Psychopathic Personality Act which the Supreme Court of Minnesota had characterized (State ex rel. Pearson v. Probate Court, 205 Minn. 545, 287 N.W. 297) as "providing for the care and commitment of persons having uncontrollable and insane impulses to commit sexual offenses" and as "treat[ing] them as insane". The applicant had been adjudicated to be a "psychopathic personality" on the basis of medical findings. This occurred in 1962. Previously, in 1955, he had been adjudicated "mentally ill" and committed to a State mental hospital—to which he was twice returned after releases in 1956 and 1957. In addition to being a homosexual, the applicant was also mentally ill. He was confined not for a criminal offense but for mental illness coupled with an utter lack of power to control his sexual impulses. Plaintiff is confined for a criminal offense—the record discloses no mental illness but only a mental or personality disorder coupled with a propensity (not uncontrollable impulse) to the commission of sex offenses.

The judgment order of the District Court is affirmed.

Affirmed.

CUMMINGS, Circuit Judge (dissenting).

The term "disability" in the Social Security Act covers inability to engage in any substantial gainful activity by reason of any medically determinable "mental impairment" which can be expected to last continuously for at least a year (42 U.S.C. §§ 416(i) (1) (A) and 423(c) (2)). The social security regulation in question (20 C.F.R. § 404.1519(c) (2) (iii), 42 U.S.C.A.App. p. 494) provides:

"Personality disorders are characterized by patterns of socially unacceptable behavior, such as chronic alcoholism, sexual deviation and drug addiction. In the absence of an associated severe psychoneurosis or psychosis, a personality disorder does not in itself result in inability to engage in substantial gainful activity. A person confined in a correctional institution because of antisocial behavior will not be considered disabled unless he has other severe impairments which would preclude any substantial gainful activity if he had not been so confined."

Psychiatrist Frank M. Perez's last report on plaintiff states:

"The inmate is basically a sociopathic personality with pedophilic tendencies. He has never profited from previous experiences or repeated periods of incarceration. He has been classified as a Sexually Dangerous Person according to the provisions of the Penitentiary Act. He is not considered mentally ill or intellectually deficient. From the prognostic point of view, the social rehabilitation of a person with his long record of offenses is very poor from the probability point of view.

"It is felt that inmate should remain in this prison until the conclusion of the maximum term of his sentence."

The Bureau of Old-Age and Survivors Insurance found that plaintiff had a "mental condition." Subsequently the hearing examiner found that plaintiff had a "mental aberration" that had reached the "long-continued and indefi-

nite stage." In my judgment these findings presently qualify plaintiff for "disability" as defined in the statute. In rejecting plaintiff's application, the hearing examiner relied on the Regulation. However, to the extent that the Regulation is inconsistent with the statute, it must give way. Marion v. Gardner, 359 F.2d 175, 181 (8th Cir. 1966). This, of course, does not mean that court-imposed hospitalization or incarceration will establish the statutory disability except in unusual circumstances, such as presented in *Marion* and here.