**John Durgin WALDRON Jr.**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

Civ. No. 70–1373.

United States District Court,
D. Maryland.

June 23, 1972.

Louis J. Weinkam, Baltimore, Md., for plaintiff.

George Beall, U. S. Atty., and Leonard M. Linton, Jr., Asst. U. S. Atty., Baltimore, Md., for defendant.

JAMES R. MILLER, Jr., District Judge.

*Memorandum Opinion and Order*

This is an action under 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health, Education and Welfare denying the plaintiff disability benefits under 42 U.S.C. §§ 416(i) and 423. The initial decision by a hearing examiner on August 27, 1970, denying benefits became the final decision of the Secretary in this case when the Appeals Council denied plaintiff's request for review on September 25, 1970. The defendant has moved for summary judgment.

The plaintiff, upon conviction of breaking and entering in the Circuit Court of Anne Arundel County, Maryland on April 17, 1968, was sentenced to five years imprisonment. Later after a diagnostic evaluation and a judicial hearing, he was adjudicated to be a "defective delinquent" by a Maryland court of competent jurisdiction under art. 31B § 1 et seq., Md.Ann.Code (1971 Repl. Vol.).

Patuxent is a medium security institution established for the treatment of recidivists whose criminal activities are occasioned, at least in part, by mental disorders. Tippett v. Maryland, 436 F. 2d 1153 (4th Cir. 1971), cert. granted 404 U.S. 999, 92 S.Ct. 567, 30 L.Ed.2d 552 (1971), cert. dismissed as improvidently granted sub nom. Murel v. Baltimore City Criminal Court, 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972). Commitment to Patuxent must be subsequent to a criminal conviction but the commitment proceeding is civil in nature. Confinement, after a judicial determination of an individual's "defective delinquent" status, is for an indefinite period of time subject to periodic petitions for review in the state courts. An individual may also obtain release through the decision of the Patuxent staff.

On December 17, 1969, plaintiff filed with the Secretary an application for disability insurance benefits alleging therein that he had been unable to work because he was a "defective delinquent." After a hearing at which plaintiff and an employee of Patuxent Institution testified and after reviewing certain records relating to the plaintiff, the hearing examiner denied the application primarily on the ground that the plaintiff had not sustained his burden of proof and that the evidence failed

". . . to establish that the claimant's impairments were of such severity as to preclude him from engaging in substantial gainful activity for any continuous period beginning on or subsequent to June 1968 that has lasted for at least 12 months." (tr. 16).

The only issue before this court is whether the final decision of the Secretary is supported by substantial evi-

dence. 42 U.S.C. § 405(g). Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971).

To qualify for disability insurance benefits and a period of disability under § 223 and § 216(i) of the Social Security Act (42 U.S.C. §§ 423 and 416(i)), an individual must meet the insured status requirements of these sections, be under age 65, file an application for disability insurance benefits, and be under a "disability" as defined in the Act.

The term "disability" is defined in section 223 to mean:

"(d) (1) * * *

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *

"(B) * * *

"(2) For purposes of paragraph (1) (A)—

"(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

"(B) * * *

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

"(4) * * *

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

The defendant agrees that plaintiff had worked a sufficient number of quarters to meet the insured status requirements of the Act.

The plaintiff testified that he was born on June 22, 1942 and has an eighth grade education. He has worked as a plumber, electrician, shrimper, short-order cook, truckdriver, taxicab driver, and service station attendant. He completed an eight-week course in welding at Patuxent and substantially completed a correspondence course in refrigeration and air conditioning. He makes plumbing repairs regularly at the Institution when the situation demands. His physical health is good and he regularly engages in weight lifting activity in the gymnasium at the Institution.

The plaintiff was previously convicted of auto larceny in 1952, a Dyer Act violation in 1956, an assault and beating in 1960, an assault and battery in 1961, a parole violation in 1962, a trespassing in 1962, and grand larceny in 1962.

Plaintiff received psychiatric treatment for about two years starting when he was 12 years old because he was continually running away from home. In 1968, prior to his latest conviction, he was evaluated at Clifton T. Perkins State Hospital, in Maryland, where he was diagnosed as having a sociopathic personality, antisocial type. The evaluation at Patuxent found no obvious clini-

cal evidence of psychosis. He was not hallucinated nor delusional, nor was there evidence of psychotic thought disorder. The Patuxent staff, in a report dated August 20, 1968, stated that his emotional instability coupled with his history of antisocial activity made him a serious danger to society and qualified him for commitment as a defective delinquent within the meaning of art. 31B § 1 et seq., Md.Ann.Code (1971 Repl. Vol.). (Tr. 61–63).

Plaintiff argues that his commitment and confinement as a "defective delinquent" constitute sufficient evidence of a disability by reason of a mental impairment on the theory that his confinement resulting from his defective delinquent status prevents his being engaged in any substantial gainful activity.

▮ The burden of proof rests upon the plaintiff to establish his entitlement to disability insurance benefits under the Social Security Act. Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965). The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla but less than a preponderance and must be based on the record as a whole. Vitek v. Finch, *supra;* Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Celebrezze v. Bolas, 316 F. 2d 498 (8th Cir. 1963).

The hearing examiner's decision was guided by the Secretary's Regulations promulgated under the authority of Section 205(a) of the Social Security Act, *supra.* Evaluation of disability is discussed in 20 C.F.R. § 404.1502, which specifies that primary consideration must be given to the severity of the claimant's impairment. Section 404.-1502 provides in pertinent part:

"Consideration is also given to such other factors as the individual's age, education, and work experience. Medical considerations alone can justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities . . . ."

To be considered disabled, the Regulation goes on to state, it must be established that the physical or mental impairments are of such severity (i. e. result in such lack of ability to perform significant functions as moving about, handling objects, hearing, speaking, reasoning, and understanding) that the individual is not only unable to do the previous work, or work commensurate with previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

The examiner next considered the Regulation discussing personality disorders. 20 C.F.R. Subpart P. App. § 12.-04. That Regulation provides, in pertinent part, that for a personality disorder to be considered disabling, the disorder must be:

"Manifested by marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people and persistence of one of the following:

\*    \*    \*    \*    \*    \*

G. Life-long, habitual, and inappropriate patterns of behavior manifested by one of the following:

\*    \*    \*    \*    \*    \*

2. Antisocial or amoral behavior (including pathologic sexuality) manifested by: (a) inability to learn from experience and inability to conform with accepted social standards, leading to repeated conflicts with society or authority and (b) by psychopathology documented by mental examination and the results of appropriate, standardized psychological tests."

The plaintiff appears to have the requisite persistent anti-social or amoral behavior. The hearing examiner, however, found that such behavior alone did not constitute a "disability" because the personality disorder was not: "Manifested

by marked restriction or daily activities and construction of interest, and deterioration in personal habits and seriously impaired ability to relate to other people . . . ." (Tr. 13.)

The plaintiff has worked before, in between, and even during his period of incarceration. The hearing examiner found that the plaintiff is mentally and physically capable of performing in any of his past occupations. That conclusion is substantially supported by the evidence. Plaintiff's mental disorder is not of the severity which is required by the Act and Regulations in order to qualify him for disability benefits.

The plaintiff points to Marion v. Gardner, 359 F.2d 175 (8th Cir. 1966), for support of his claim. That case illustrates one pole, however, of the distinction between incarcerated individuals with personality or behavior disorders which result in "disability" and those whose disorders do not result in "disability." *Marion* dealt with an individual suffering from medically diagnosed *uncontrollable* sexual urges which had resulted in his confinement under the Minnesota Psychopathic Personality Act, Minn.Stat.Ann. §§ 526.09–526.11 (1947). The other pole is illustrated by Pierce v. Gardner, 388 F.2d 846 (7th Cir. 1967), cert. den. 393 U.S. 885, 89 S.Ct. 197, 21 L.Ed.2d 162 (1968). In *Pierce* no uncontrollable impulse was shown, but rather the evidence was that the claimant there was not mentally ill or deficient but *had* a "sociopathic personality with pedophilic tendencies" which resulted in his *propensity* for the commission of crimes.

■ In the instant case, the plaintiff has been diagnosed as having a "Sociopathic Personality Disorder, Antisocial Type" by the Patuxent staff (Tr. 67), but without psychosis or organic brain symptomatoloty (Tr. 67). There was no medical or other evidence that his antisocial actions were compulsive or uncontrollable.· As previously indicated, he worked in the Institution as a plumber and had participated successfully in several vocational training courses. His behavior within the Institution generally was good and he occupied a status of having maximum privileges within the framework of Patuxent. The hearing examiner had substantial evidence upon which to find that the personality disorder of the plaintiff did not so severely restrict the daily activities, constrict the interests, deteriorate the personal habits or impair the ability to relate to other people on the part of the plaintiff as to constitute a disabling impairment within the meaning of 42 U.S.C. § 423.

■ There is an important difference between an impairment which results in an inability to perform the physical or mental functions necessary to engage in substantial gainful activity on the one hand and antisocial behavior which results in confinement on the other. In the latter case, it is the confinement rather than the impairment which precludes the individual from engaging in substantial gainful activity. The Act does not intend for simple incarceration to result in a finding of disability. Pierce v. Gardner, *supra,* at 848, Marion v. Gardner, *supra,* at 182; Hunter v. Secretary, H. E. W., 284 F.Supp. 524 at 526 (E.D.Pa. 1968).

■ The facts of this case bring it more within the rationale of Pierce v. Gardner than of Marion v. Gardner. Here the evidence supports the hearing examiner's decision that the plaintiff's *propensity* to commit crimes caused by an underlying personality disorder does not preclude him from engaging in substantial gainful activity. Certainly the evidence did not require the hearing examiner to find that the plaintiff had *uncontrollable* urges to commit crimes caused by a severe mental or personality disorder which does preclude him from engaging in substantial gainful activity. There being substantial evidence supporting the hearing examiner's decision, the defendant's motion for summary judgment must be granted.