805 F.2d 1035
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joseph Herbert MARS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-1900.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1986.
 
 Before WELLFORD, MILBURN and BOGGS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff Joseph Herbert Mars appeals from the summary judgment of the district court affirming the final decision of the Secretary denying his application for surviving child's benefits under the Social Security Act. 42 U.S.C. Sec. 402(d)(1)(B)(ii). The final decision of the Secretary is that plaintiff was not suffering from a disabling mental impairment on his twenty-second birthday. Because substantial evidence in the record as a whole supports the Secretary's decision, see Garner v. Heckler, 745 F.2d 383, 388 (6th Cir.1984), we affirm.
 
 I.
 
 2
 The plaintiff has a long history of behavioral problems. His mother died when he was two years old. His relationship with his stepmother can only be characterized as an adversary one, and he complains of considerable abuse throughout his childhood. He was suspended from school on several occasions for disciplinary violations, but finally graduated from high school. He then enrolled in a federal job corps at Atterbury, Indiana, in May 1974, but was dismissed in July 1974, for fighting.
 
 
 3
 Plaintiff was convicted of bank robbery on September 25, 1975, and sentenced on December 4, 1975. His disruptive behavior during the trial resulted in a citation for contempt, and he was sentenced to a six-month prison term for that charge, in addition to the sentence imposed on the charge of robbery. Before his incarceration, plaintiff worked as a laborer in the construction industry. For approximately a month after he was released from prison in 1979, plaintiff worked as a busboy in Detroit.
 
 
 4
 Plaintiff's mental condition was evaluated during his incarceration, and his institutional adjustment was poor, as evidenced by numerous reports of misconduct. He was transferred to the federal prison in Ashland, Kentucky, in 1977, and while there, the staff began to monitor his mental condition. His medical record from that facility shows that plaintiff was nervous and that he was given Valium in March 1977. On August 10, 1977, the record indicates that plaintiff was complaining of delusions and that he was referred for psychological evaluation.
 
 
 5
 His twenty-second birthday occurred on August 22, 1977. He was referred for psychological evaluation at the mental health division of the federal prison facility at Butner, North Carolina, on October 17, 1978, approximately fourteen months after his twenty-second birthday.
 
 
 6
 On September 30, 1978, a report prepared by Dr. S. Johnson at Butner stated that the probable diagnosis of plaintiff's condition was schizophrenia of the paranoid type. However, the summary prepared by plaintiff's case manager does not mention the possible onset date of plaintiff's condition.
 
 
 7
 The psychological reports prepared before plaintiff's twenty-second birthday do not establish the existence of a disabling mental impairment. An EEG performed in 1974 was considered abnormal, but the report stated no conclusion that the plaintiff was suffering from a disabling mental impairment at that time. A report prepared by the Michigan Department of Corrections on November 11, 1974, stated that plaintiff needed "to settle down and mature." Entries on his health record made in March 1977 indicate that plaintiff had been taking Valium to control his behavioral problems. An entry dated August 8, 1977, suggested that plaintiff was malingering. A final entry on August 10, 1977, indicated possible delusions and suggested referral to a psychiatrist.
 
 
 8
 Reports prepared after plaintiff's twenty-second birthday do not conclusively indicate the time at which plaintiff's mental impairment began. On May 18, 1978, Dr. J.E. Woods made a provisional diagnosis that plaintiff was suffering from an organic brain disorder, but plaintiff refused to take an EEG to support this diagnosis. On April 24, 1978, Dr. Woods reported that plaintiff's performance on the Minnesota Multi-phasic Personality Inventory ("MMPI") may have been consistent with this diagnosis.
 
 
 9
 A progress report prepared by plaintiff's case manager at the Butner facility on March 14, 1979, reported that although plaintiff's medical condition was unclear, it did "not appear that he would have any medical problems that would affect his employment suitability." However, the case manager noted that plaintiff appeared to benefit from anti-psychotic drugs. A medical report prepared on March 30, 1979, contained a diagnosis of "paranoid schizophrenia by history, apparently in remission." In a psychiatric report prepared by the Michigan Department of Education in October 1979, plaintiff reported that he had experienced mental problems since the age of eighteen. Nevertheless, the report concluded that plaintiff was able to assume regular employment responsibilities. A psychological evaluation prepared in September 1979 provides no opinion regarding the date of the onset of plaintiff's disability. Dr. K. Noelle Clark stated that plaintiff had below average intelligence and diagnosed his condition as "personality and character disorder."
 
 
 10
 An intake assessment of plaintiff's condition was prepared by Hegira Programs, Inc. on October 1, 1980. Plaintiff reported to the intake worker that he began having delusions about being a rabbit while he was in prison. The intake worker concluded that plaintiff "appears to have had a thought disorder which is in remission currently." However, there is no evidence as to the date of onset other than plaintiff's contention that he suffered delusions while in prison.
 
 
 11
 On September 10, 1980, plaintiff was admitted to Northville Regional Psychiatric Hospital, at which time he again reported experiencing the delusion that he was a rabbit while he was in prison. Once again, there is no opinion as to the date of the onset of this disorder.
 
 
 12
 In July 1980, plaintiff sought treatment for "nervousness" in the emergency room of the Henry Ford Hospital. The consultant, Nurse Norman, noted that plaintiff had a psychiatric history dating back to age seventeen. Her diagnostic impression was that plaintiff was suffering from chronic schizophrenia.
 
 
 13
 On November 14, 1980, plaintiff was examined by Dr. Su J. Chung. Dr. Chung reported that plaintiff had his first nervous breakdown in jail.
 
 
 14
 Plaintiff was evaluated by Kathleen Voss, M.A., on June 21, 1981. Voss stated that plaintiff's psychiatric history dated back to his years in prison, during which time he suffered the delusion that he was a rabbit. She diagnosed plaintiff's condition as "acute psychotic episode in remission." Finally, in 1982, Dr. David Levadi diagnosed plaintiff's condition as chronic undifferentiated schizophrenia. Once again, there is no mention of the possible date of onset other than plaintiff's contention that his mental problems began at the age of ten to twelve years.
 
 
 15
 On May 3, 1982, plaintiff applied for surviving child's disability benefits for his mental disorder. His claim was denied initially and upon reconsideration. He requested a hearing before an Administrative Law Judge ("ALJ"). At the hearing, which was held on August 16, 1983, plaintiff produced the medical evidence discussed above and the testimony of three witnesses to support his claim that he suffered from a disabling mental impairment prior to his twenty-second birthday.
 
 
 16
 His first witness, Norbert Slank, served as his parole officer. Slank has a bachelor's degree in education and a master's degree in educational psychology. He also had extensive experience preparing presentence reports containing psychological histories of the parolees for which he was responsible. His first contact with this plaintiff occurred in September 1981, approximately four years after plaintiff's twenty-second birthday. Slank testified on the basis of plaintiff's medical and disciplinary records, his discussions with plaintiff's caseworkers, and his own experience with the plaintiff. He found it significant that plaintiff had a troublesome childhood, that his institutional adjustment was poor, and that the robbery plaintiff committed was unusual (plaintiff used a note and demanded only $2,000.00). This evidence led Slank to the conclusion that Mars' psychological problems had been in existence since at least the robbery, perhaps since childhood.
 
 
 17
 His second witness, Phyllis Whelan, was a social worker with a B.A. in psychology and a master's degree in social work from the University of Michigan. She supervised the therapist who worked with plaintiff at Hegira Programs. She read the primary therapist's report and the report written by plaintiff's parole officer. In addition, she spoke with plaintiff on two or three occasions. On the basis of this information, Whelan concluded that plaintiff's mental impairment began when he was two years old. Whelan's first contact with plaintiff also occurred in 1981.
 
 
 18
 The final witness presented by plaintiff was Clinton Williams, a minister who had known plaintiff all his life. He testified that "something was lacking" in plaintiff's mental condition and that the impairment existed since childhood.
 
 
 19
 On February 2, 1984, the ALJ denied petitioner's claim for surviving child's benefits. Plaintiff pro se requested review by the Appeals Council, which upheld the ALJ's decision. Plaintiff subsequently retained counsel, and on March 28, 1984, plaintiff's counsel sent a more detailed request for review to the Appeals Council. On May 3, 1984, the Appeals Council refused to vacate its earlier decision. This appeal follows the district court's grant of summary judgment in favor of the Secretary.
 
 
 20
 The issues before this court are whether the ALJ gave adequate weight to the testimony of plaintiff's lay witnesses and whether there is substantial evidence in the record as a whole to support the Secretary's determination that plaintiff was not suffering from a disabling mental impairment before his twenty-second birthday.
 
 II.
 A.
 
 21
 It is axiomatic that the claimant bears the burden of proving that he is entitled to benefits under the Social Security Act. Halsey v. Richardson, 441 F.2d 1230, 1236 (6th Cir.1971). An impairment must be established by medical evidence. 42 U.S.C. Sec. 423(d)(3); 20 C.F.R. Sec. 404.1508. Acceptable sources of such information include licensed physicians, osteopaths, licensed or certified psychologists, and persons authorized to send copies of medical records. 20 C.F.R. Sec. 404.1513. This court has previously considered the appropriate weight to be given the testimony of lay witnesses. In Lashley v. Secretary, 708 F.2d 1048 (6th Cir.1983), we held that "[p]erceptible weight must be given to lay testimony where ... it is fully supported by the reports of the treating physicians." Id. at 1054. See Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980); Beavers v. Secretary, 577 F.2d 383, 386 (6th Cir.1978). See also Maisch v. Heckler, 606 F.Supp. 982, 991 (S.D.N.Y.1985) ("where it is not possible to reach a determination of disability based on expert medical opinion and evidence, subjective testimony by lay witnesses may be entitled to great weight if uncontradicted in the record.")
 
 
 22
 In the instant case, the lay testimony is not supported by medical evidence. Although several of the medical reports repeat plaintiff's contention that he had a mental disability that began during his childhood, and his statement that he experienced the "rabbit delusion" while in prison, there is no clinical finding supporting the existence of a disabling mental impairment before claimant's twenty-second birthday. As the district court observed:
 
 
 23
 The court has reviewed the transcript testimony of the individuals and their credentials. The ALJ did not err in giving their testimony little or not [sic] weight. Mr. Slank and Miss Whelan do not have the credentials to satisfy the requirements of 20 C.F.R. Sec. 404.153(a). Of course, they are qualified to testify under section 404.1513(e), but their testimony is relevant only as to plaintiff's present ability to work. Since they did not observe plaintiff in 1977, they could not render a credible opinion as to plaintiff's ability to perform substantial gainful activity at that time. Even if this court were to consider them experts, their opinions as to plaintiff's mental condition and the severity of that condition in 1977 are of little value because the opinions are not supported by medical evidence or clinical findings.
 
 
 24
 We hold that the ALJ did not err in failing to accord substantial weight to the testimony of the lay witnesses.
 
 B.
 
 25
 Pursuant to 42 U.S.C. Sec. 405(g), judicial review of the Secretary's decision is limited to determining whether there is substantial evidence in the record as a whole to support his decision. The reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). The Secretary is charged with finding the facts relevant to an application for disability benefits, and the Secretary's findings, if supported by substantial evidence, are conclusive. 42 U.S.C. Sec. 405(g).
 
 
 26
 Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)). "Substantiality of the evidence must be based upon the record taken as a whole." Garner, 745 F.2d at 388; see Allen, 613 F.2d at 145; Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir.1978). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the 'substantiality of evidence must take into account whatever in the record fairly detracts from its weight.' " Beavers, 577 F.2d at 387 (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 464 (1951)); see also Garner, 745 F.2d at 388.
 
 
 27
 In his Report and Recommendation, which was adopted by the district court, the magistrate found that plaintiff's history suggests the existence of some mental problems on or before his twenty-second birthday. This finding is supported by plaintiff's history of disciplinary problems, his criminal record, and his poor adjustment to institutionalization. His medical records show the existence of nervousness in August 1977, and a referral to a psychiatrist on August 10, 1977. The transfer summary prepared by plaintiff's case manager on December 7, 1978, noted only that plaintiff's mental condition began to deteriorate while he was confined at the Ashland facility. Finally, the existence of some type of mental disability on his twenty-second birthday is supported by Dr. Woods' provisional diagnosis of organic brain syndrome, which was made on May 18, 1978, and by an abnormal EEG performed on November 20, 1974. However, none of these reports concludes that a disabling impairment existed on August 22, 1977.
 
 
 28
 Plaintiff attempts to analogize his case to Johnson v. Secretary, 679 F.2d 605 (6th Cir.1982). However, the instant case does not include the overwhelming medical evidence like that produced in Johnson, and, consequently, this court cannot make the same "common sense" determination regarding disability before the twenty-second birthday. Id. at 607. Although the plaintiff in the instant case, like the claimant in Johnson, was involved in criminal activity before his twenty-second birthday, the medical evidence produced in Johnson more clearly supported the existence of a disabling impairment at the relevant point in time. Clearly, the facts that plaintiff was involved in criminal activity and that he had disciplinary problems prior to his twenty-second birthday are not sufficient to support a disability determination.
 
 
 29
 There is an important difference between an impairment which results in an inability to perform the physical or mental functions necessary to engage in substantial gainful activity on the one hand and antisocial behavior which results in confinement on the other. In the latter case, it is the confinement rather than the impairment which precludes the individual from engaging in substantial gainful activity. The Act does not intend for simple incarceration to result in a finding of disability.
 
 
 30
 Waldron v. Secretary, 344 F.Supp. 1176, 1180 (D.Md.1972).
 
 
 31
 On the other hand, the ALJ's determination that no disabling mental impairment existed until October 1978 is supported by substantial evidence. It was not until October 14, 1978, that plaintiff's mental condition was considered severe enough to warrant referral to the mental health division in the federal facility at Butner, North Carolina. He was subsequently diagnosed as a paranoid schizophrenic. Subsequent reports showed that plaintiff responded favorably to treatment with anti-psychotic drugs, that his schizophrenic condition was in remission, and that he could be expected to resume normal employment responsibilities. In short, the plaintiff has not carried the burden of proving that he suffered from a disabling mental impairment prior to his twenty-second birthday.
 
 III.
 
 32
 Because the decision of the ALJ is supported by substantial evidence in the record, the decision of the district court granting summary judgment in favor of the Secretary is AFFIRMED.