# Massachusetts Mutual Life Insurance Company
# v. James E. Ouellette

[617 A.2d 132]

No. 91-448

Present: **Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 4, 1992

*Samuel Hoar, Jr.,* of *Dinse, Erdmann & Clapp,* Burlington, for Plaintiff-Appellee.

*Gregory W. McNaughton,* Barre, for Defendant-Appellant.

**Dooley, J.** Plaintiff, Massachusetts Mutual Life Insurance Company, issued disability and life insurance policies to defendant, James E. Ouellette, an optometrist. When defendant was found guilty of lewd and lascivious conduct with a minor and was imprisoned, he filed a claim with plaintiff seeking disability benefits and a waiver of his obligation to pay life insurance premiums. In response, plaintiff sought a declaratory judgment

that it was not required to honor these claims. Plaintiff's motion for summary judgment was granted. Defendant appeals, claiming that the court erred in failing to find him disabled under the policies and in granting summary judgment. We affirm.

As part of the plea agreement that underlies defendant's conviction, he sold his optometry practice and surrendered his license to practice optometry, his usual occupation for the purposes of the policies at issue. Following the commencement of his sentence, defendant filed a claim with plaintiff for "total disability" benefits and requested a waiver of life insurance premiums, relying on the following policy provisions:

> "[T]otal disability" means incapacity of the insured . . . which requires the care of a legally qualified physician . . . .
>
> . . . .
>
> [T]he Company will deem the insured to be totally disabled if the incapacity prevents the insured from performing substantially all of the duties of his usual occupation, business, employment or profession. . . .
>
> "Total disability due to sickness" means only total disability (as defined above) resulting from or contributed to by illness, disease, bodily or mental infirmity of the insured.

In his claim, defendant stated that he suffered from atypical paraphilia, primarily pedophilia, and that this was a recognized mental disorder. He claimed that this illness had caused him to be totally disabled, within the meaning of the policy provisions, and thus entitled to disability benefits and a waiver of his premium obligation.

It is undisputed that defendant's mental disorder, pedophilia, first manifested itself in the mid to late 1970s, and that the resulting behavior continued until his arrest in 1987. Defendant did not seek medical attention for his mental disorder in the ten years prior to his conviction. He was placed under the care of a physician for the first time, for diagnosis and evaluation, in the course of this litigation and presently receives counseling in prison. He was physically and mentally able to perform all the duties of optometry until the time of his incarceration and loss of license.

Plaintiff denied defendant's insurance claim, asserting that the inability of defendant to perform the duties of his profes-

sion was caused by his conviction and the surrender of his optometry license, not by any illness or disease. The trial court agreed with this contention in its summary judgment decision. Defendant argues that this decision is wrong because it granted summary judgment when there were disputed issues of material fact and because it misinterpreted the insurance policy.

Summary judgment is appropriate if, after giving the opposing party the benefit of all reasonable doubts and inferences, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(c); *Howard Bank v. Estate of Pope*, 156 Vt. 537, 539, 593 A.2d 471, 472 (1991). This standard applies in the present proceeding as well as at the trial level. See *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 366, 610 A.2d 132, 133 (1992).

We agree with the trial court that the material facts of this case are not in dispute, and the only issue for resolution is the application of the law to those facts. Defendant's theory is that he is incapacitated by an illness, pedophilia, and that the illness prevents him "from performing substantially all of the duties of his usual occupation," as those terms are used in the policies, because it has caused his incarceration. None of the factual predicates of this argument are disputed by the plaintiff. Therefore, summary judgment is proper if plaintiff is correct on the law.

The trial court ruled that because defendant could still be practicing optometry had he not surrendered his license and been incarcerated, his inability to practice optometry was caused by the legal consequences of his behavior and not by a disability. This holding follows the general rule that disability insurance policies provide coverage for factual disabilities, not legal disabilities. 15 G. Couch, Cyclopedia of Insurance Law § 53.41 (2d ed. 1983).

Although defendant's argument is novel in the context of a private disability insurance claim, it has been uniformly rejected in analogous federal cases involving determinations of "total disability" under the Social Security Act. The definition of disability in the Social Security Act requires that the disabled individual be unable "to engage in any substantial gainful activity *by reason of* any medically determinable physical or

mental impairment." 42 U.S.C. § 423(d)(1)(A) (emphasis supplied).[1] Focusing on the causation element in the definition, courts interpreting the Act have held that persons in prison because of acts alleged to result from mental impairments are not eligible for disability benefits.[2] See, e.g., *Pierce v. Gardner*, 388 F.2d 846, 847–48 (7th Cir. 1967); *Bertram v. Secretary of H.E.W.*, 385 F. Supp. 755, 757 (E.D. Wis. 1974); *Waldron v. Secretary of H.E.W.*, 344 F. Supp. 1176, 1180 (D. Md. 1972). In *Pierce*, the court reasoned:

> [T]he plaintiff [a convicted pedophile] has wholly failed to meet the burden of showing that his "mental disorder" is what precludes him from engaging in substantial gainful activity. In fact, to the contrary, the record appears to indicate that the plaintiff's mental condition or disorder has not affected his ability to engage in his occupation . . . albeit his propensities for the commission of sex offenses have repeatedly resulted in incarcerations which have interrupted his employment.

388 F.2d at 848. The distinction is explained further in *Waldron*:

> There is an important difference between an impairment which results in an inability to perform the physical or mental functions necessary to engage in substantial gainful activity on the one hand and antisocial behavior which results in confinement on the other. In the latter case, it is

---

[1] Defendant contends that the social security cases are inapplicable because the Social Security Act requires that a claimant be unable to engage in "any" gainful activity, whereas his policy requires only that there be an inability to perform "substantially all" occupational duties. See 42 U.S.C. § 423(d)(1)(A). The distinction, however, is irrelevant to the question before us. The trial court did not hold for plaintiff because defendant could perform the duties of other occupations or professions. Rather, it held that defendant's disability did not preclude him from practicing optometry. None of the Social Security Act cases discussed in the text turn on the ability of the claimant to engage in other gainful activity while in jail.

[2] Although there have been changes in the statutory eligibility requirements for disability benefits, none of the changes has affected this causation element. Further, Congress has added a prohibition on paying disability benefits to prisoners under certain circumstances. See 42 U.S.C. §§ 402(x), 423(i).

confinement rather than the impairment which precludes the individual from engaging in substantial gainful activity. 344 F. Supp. at 1180.

The reasoning of the Social Security Act cases is equally applicable here.[3] After defendant's disorder manifested itself, he remained able to practice optometry for nearly ten years. He would not have stopped practicing except for the initiation of criminal proceedings, which resulted in incarceration and the surrender of his license. Prior to the criminal proceedings, defendant felt physically and mentally able to assume the duties of his occupation and never sought medical treatment. There is no evidence to contradict the trial court's conclusion that it is the legal consequences of his behavior that preclude the defendant from being able to work, not his mental illness. Summary judgment was appropriate.

Another consideration also refutes defendant's interpretation of the policy terms. Imposing liability on disability insurance companies in cases like this would be contrary to the public interest in discouraging coverage for an insured's own intentional criminal conduct. See *Cooperative Fire Insurance Association v. Domina*, 137 Vt. 3, 4, 399 A.2d 502, 502 (1979) (even innocent coinsured cannot recover on fire insurance policy where other coinsured intentionally destroyed their property). Although defendant now asserts that his behavior was caused by mental illness and was nonvolitional, his conviction is inconsistent with this position. Insanity was available to defendant as a defense, see 13 V.S.A. § 4801, and he failed to use it. Although defendant may now show that he was mentally ill at the time of the offense to prove his claim, see V.R.E. 803(22) (evidence of criminal judgment based on nolo contendere plea not admissible to show facts underlying judgment), the evi-

---

[3] Defendant argues that we should not accept the reasoning of the Social Security Act cases without a clear insurance policy exclusion because terms in a policy must be construed against the insurer. We believe that defendant's interpretation of the policies "would encompass a risk not contemplated by the kind of policy issued nor intended to be undertaken by the company." *State v. Glens Falls Ins. Co.*, 132 Vt. 97, 99, 315 A.2d 257, 258 (1974). Plaintiff is "entitled to that fair construction which reflects the understanding of the parties." *Id.* A fair construction excludes defendant's claim.

dence before the court in connection with the summary judgment motion fell far short of such a showing. We must conclude that defendant is incarcerated because he committed a crime, and not because of mental illness. At a minimum, he is incarcerated because he knowingly and voluntarily chose not to contest the criminal charges against him.

Our decision is further supported by numerous cases in which an insured sought insurance coverage for a liability judgment arising from the insured's sexual abuse of children. A majority of courts have held that the intent to cause injury is inferred from the nature of the acts as a matter of law, and therefore have denied insurance coverage under intentional conduct exclusions. See, e.g., *Wiseman v. Leming*, 574 N.E.2d 327, 328–29 (Ind. Ct. App. 1991) (intent inferred despite psychologist's testimony that insured had no subjective intent to injure); *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 160, 589 N.E.2d 365, 369, 581 N.Y.S.2d 142, 147 (1992) (cause and effect inseparable in act of child molestation; to do the act is essentially to do the resulting harm); *Rodriguez v. Williams*, 107 Wash. 2d 381, 387, 729 P.2d 627, 630 (1986) (homeowner's policy provision excluding coverage for an insured who intends to harm another did not cover sexual abuse of child). The court in *Mugavero* rejected "the notion that [the insured] should receive insurance protection for sexually molesting these children, and thus, in effect, be permitted to transfer the responsibility for his deeds onto the shoulders of other homeowners in the form of higher premiums." 79 N.Y.2d at 161, 589 N.E.2d at 369, 581 N.Y.S.2d at 146. It would be similarly inappropriate to transfer the responsibility for this defendant's conduct onto the shoulders of disability insureds.

*Affirmed.*