GUIDRY, J.,
dissenting.
U dissent because I believe the majority mistakes the issue before us, which is strictly the legal issue of whether there is coverage pursuant to a disability policy for Dr. Berry in his present state of addiction. While acknowledging that the facts are “generally Undisputed”, the majority finds there is a genuine issue of material fact concerning the degree (i.e., quantification) of the risk of relapse faced by Dr. Berry should he return to the practice of anesthesiology. Based on this alleged “genuine issue of material fact”, the majority remands to the trial court for further proceedings where such “quantifying” evidence can be presented to the court. However, “materiality” is determined by the applicable substantive law which, in this case, is interpretation of a contract. As explained herein, the plain language of the policy simply does not cover the risk of relapse, no matter how great or small, that Dr. Berry will go back to drug use that would then render him incapable of mentally and physically performing the essential functions of an anesthesiologist.
That Dr. Berry faces a risk of relapse as a result of his addiction is not a disputed fact. Nor does the degree of this risk affect the resolution of the issue Rbefore us. The issue is not whether Dr. Berry’s risk of relapse is so great that he is incapable of performing the material functions of his job, but whether risk of relapse is covered by the policy language in question. Indeed, evidence has already been presented regarding this issue, and it is undisputed that as a result of his addiction, Dr. Berry maintains a high risk of relapse. Moreover, the evidence is clear that this risk of relapse is high enough that his treating physicians recommend that he not return to his former profession as an anesthesiology. Defendant does not dispute this evidence, and for all intents and purposes, it can be presumed that Dr. Berry is at the highest risk possible, which is the most that will be established on remand.
However, even assuming the evidence proves he has the greatest risk of relapse, the resolution of the issue before us is unaffected, as there is no genuine issue of material fact relevant to whether the policies at issue provide coverage to Dr. Berry at the present time. The defendants maintain, and I must agree that, as a matter of law, the insurance policies no longer provide coverage for Dr. Berry’s addiction, now that he is a rehabilitated addict in full sustained remission. I reach this result applying Louisiana’s very clear and well-established law concerning summary judgments, contract interpretation, burden of proof and standard of review.
SUMMARY JUDGMENT
Summary judgments are now favored by law. La. C.C.P. art. 966(B). The mover, in this case, defendant/insurer, Paul Revere, bears the initial burden of showing there in no genuine issue of material fact, but need only point out that there is an absence of factual support for one or more elements essential to plaintiffs claim. La. C.C.P. art. (C)(2). Paul Revere bore that burden by ^introducing the deposition of Dr. Berry and excerpts of a neuropsycho-logical report by F. William Black, Ph.D., supporting its assertion that Dr. Berry, although an addict, is currently mentally, *398 physically and functionally capable of performing the essential functions of an anesthesiologist based on his rehabilitated state. This evidence reveals, and is undisputed that Dr. Berry successfully completed an inpatient treatment program in 2002, has at least five years of successful sobriety, is drug-free and continues to receive appropriate medical treatment for his addiction and was in a rehabilitated state (“full sustained remission”) at the time of trial. This evidence also establishes that despite his addiction, Dr. Berry continues to possess the education, knowledge, skill, and physical ability to perform all material functions required of an anesthesiologist. The neuropsychological report of Dr. Black reveals that Dr. Berry has a diagnosis of Opioid Dependency, in remission. This report also reveals that Dr. Berry denied having any problems with cognitive functioning, and that his prior problems with attention, concentration and memory were no longer problematic. Finally, I agree with the defendant that even the plaintiffs’ own treating physicians, Dr. Dean Hickman and Eileen Correa, Ph.D., who acknowledged the ever-present risk of relapse facing every addict and cautioned against Dr. Berry resuming the practice of anesthesiology because of that risk, were unable to state with any amount of certainty that Dr. Berry was incapable of performing the daily functions and job requirements of his profession. Defendant maintained this evidence proves there in no coverage under the policy because Dr. Berry’s current state of addiction does not render him unable to perform the essential functions of his job as anesthesiologist.
At this point, the burden shifted to Dr. Berry to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, \Aie., that because of sickness or injury — in his case, addiction — he is unable to perform the duties of his occupation as an anesthesiologist. Dr. Berry must set forth specific facts that show that a genuine issue of material fact remains regarding his ability to perform his job functions. See Samaha v. Rau, 07-1726, p. 5 (La.2/26/08), 977 So.2d 880, 883. The only evidence presented by the plaintiff in opposition to the defendant’s motion and initial showing consists only of the aforementioned affidavits by his physicians attesting that he will forever have a risk of relapse, and that because of this, they would recommend that he not return to the practice of anesthesiology, where the risk in all likelihood would increase. Unlike the majority, I find these affidavits insufficient to raise a genuine issue of material fact. Again, it is not the degree of risk at issue, rather, it is whether Dr. Berry can perform the necessary job requirements. There is no evidence presented that Dr. Berry cannot. Moreover, a remand for the introduction of more evidence concerning the degree of the risk, assuming the highest level of risk is shown to exist, still falls short of establishing that he is currently disabled within the scope of the policy language.
CONTRACT INTERPRETATION
I agree with the majority that insurance policies are to be broadly construed in favor of coverage and that all ambiguities are construed against the insurer. However, the majority fails to articulate, and I can find no ambiguity in the policy language to trigger a construction in favor of coverage. As a matter of law, the policy language in the policies at issue, which bears language commonly used in disability policies, is clear and wholly unambiguous. No one disputes that addiction is a “sickness or illness” within the scope of the policy language. Further, there is no dispute as to what constitutes the “important duties” of the ^occupation of anesthesiology. Most importantly, there is also no dispute that Dr. Berry, presently and currently, due to the treatment received and his rehabilitated state, has retained all knowledge, skill and ability to perform *399 these duties. Thus, a straight-forward application of the clear and unambiguous policy language yields the inescapable conclusion that Dr. Berry is not disabled within the terms of the policies.
BURDEN OF PROOF/STANDARD OF REVIEW and the COLBY CASE
The majority relies on a federal district court opinion, Colby v. Assurant Employee Benefits, 603 F.Supp.2d 223, 245 (D.Mass., 2009), for placing the focus on “whether the evidence of the probability of a relapse is sufficiently high to justify a finding of liability,” rather than focusing on whether an addicted person, who has been successfully rehabilitated, is covered under the policy language.[1] The court, as does the majority in this case, mistakes the issue— which is whether there is coverage under the policy — for one reliant on quantitative evidence regarding the degree of risk. Moreover, there is no dispute that Dr. Berry is at a high risk of relapse. Quite simply, applying the language pertaining to coverage from the policy to the undisputed facts leads to the inevitable conclusion that “risk of relapse” no matter how high, is simply not covered under the policies.
Moreover, I find Colby distinguishable on several distinct and significant bases. Colby dealt with an ERISA long-term disability plan and was decided under an “arbitrary and capricious” standard applicable to the plan administrator’s denial of benefits under a similar scenario. The court remanded the matter for | consideration of the risk of relapse evidence in that case, which the plan administrator had categorically excluded from its analysis as a basis for disability. The court found the administrator was arbitrary and capricious in refusing to consider the evidence about the risk of relapse into addiction of an anesthesiologist who became addicted to Fentanyl. The record in this case reflects the evidence of risk of relapse was fully considered by the trial court.
Further, the standard of review is wholly different. The arbitrary and capricious standard employed by the Colby court is applicable on review of an ERISA plan administrators decision regarding disability benefits, implying a certain amount of discretion is allowed the administrator in reaching that decision. Conversely, as aforementioned, we are guided by rules of contract interpretation which compel us to apply the direct language pursuant to the prevailing and common meaning of the terms used when such language is clear and unambiguous. As stated earlier, in my opinion the policy language is clear and unambiguous: if sickness prevents a person from performing the primary functions of one’s occupation, he is disabled and entitled to disability benefits. If the sickness does not prevent the person from performing such functions, he is not disabled or entitled to benefits under the policy. There is no degree of discretion on this court, or any other, in reaching this determination.
Further, on a motion for summary judgment, our sole inquiry is whether there exists any genuine issue of material fact precluding judgment as a matter of law. I simply cannot agree that there is any fact in dispute that would be more easily resolved if more evidence is presented. It simply does not matter how high the risk *400 of relapse when that risk, in and of itself, is not disabling. The plaintiff bore the burden of proving in this case, factual support for his contention that he is |7unable to perform the required functions of his job as an anesthesiologist. He presented the evidence he had available, the affidavits of his treating physicians. These affidavits fall short of the proof necessary to defeat summary judgment in this matter. While they strongly caution about the risk of relapse, neither physician attested that the plaintiff was unable to perform those duties. The most this evidence establishes is that, upon a return to work and to the functions which he can perform, Dr. Berry will face a higher risk of relapse than if he did not. That is simply not enough, under the policy language, to entitle him to benefits. The majority’s decision to remand for the presentation of more evidence, in essence, gives the plaintiff a “second bite at the apple” to meet the burden he failed to meet on summary judgment. Instead, the judgment should be rendered on the evidence presented, which in this case, warrants a granting of the summary judgment in favor of defendant, finding no disability benefits are owed under the policy.
LEGAL VERSUS PHYSICAL DISABILITY
Dr. Berry also contends that he is rendered disabled and unable to perform the essential job functions of an anesthesiologist because the evidence reveals that his medical license has been revoked in the three states (Washington, Arizona, and Louisiana) in which they had issued. The majority concludes that there remain genuine issues of material fact regarding “Dr. Berry’s licensing status.” To the contrary, the record contains all the documentary evidence available concerning all three revocations; each document is replete with a detailed account of Dr. Berry’s actions in Washington, where as a result of his improper diversion of controlled substances and negligent acts associated therewith resulted in one of his patients being in a comatose state. It is abundantly clear that Dr. Berry’s license revocations were a direct consequence of his actions in connection with that case in|RWashington. In fact, it is unknown whether but for that incident, when Dr. Berry’s addiction would have been discovered. Moreover, there is no indication whatsoever that his licenses were in any danger of revocation based on his addiction alone; rather, the record is clear that it was this tragic incident that occurred in Washington where a patient was rendered comatose that formed the bases for all three license revocations. The majority fails to articulate a genuine issue of material fact regarding the license revocations, and I cannot find one.
Furthermore, the jurisprudence also supports a finding that legal disability does not constitute a valid basis for disability benefits. Courts consistently hold that legal disabilities, such as license revocations, are not the type of disabilities contemplated by or included within the scope of disability policies.
Although the issue is res nova in Louisiana, other jurisdictions have addressed the effect of a legal disability vis a vis factual disability as contemplated by insurance policies. The general rule is that disability insurance policies provide coverage for factual disabilities and not legal disabilities, such as suspensions or revocations of occupational licenses. Goomar v. Centennial Life Insurance Company, 855 F.Supp. 319, 325 (S.D.Cal. 3/8/94), citing 15 G. Cough, Cyclopedia of Insurance Law § 53.41 (2d ed. 1983); see also, Brumer v. National Life of Vermont, 874 F.Supp. 60 (E.D.N.Y. 1/24/95); Allmerica Financial Life Insurance and Annuity Company v. Llewellyn, 139 F.3d 664 (9th Cir.1997); Massachusetts Mutual Life Insurance Company v. Millstein, 129 F.3d 688 (2nd Cir.1997); Massachusetts Mutual Life Insurance Company v. Ouellette, 159 Vt. 187, 617 *401 A.2d 132 (1992). A close reading of all these cases reflects that the only exception to this general rule is when the legal impediment (license revocation) is based solely on the physical impediment.
| flIn this case, it is clear that Dr. Berry’s license was revoked as a result of his negligent acts in diverting drugs for his own personal use during the performance of his duties as anesthesiologist, and was not a direct consequence of his addiction. Consequently, the legal impediment is not sufficient to invoke the policies coverage. In any event, Dr. Berry has failed to prove that he is disabled under the policy because of the prohibitions imposed by his license revocations.
CONCLUSION
For all of the foregoing reasons, together with some real concern over the potential ramifications and unwanted message to addicted persons that the majority opinion may cause, I strongly dissent from the opinion remanding this matter for further evidence that is neither material nor relevant to the issue before this court.

. It is important to note that Paul Revere paid Dr. Berry full disability benefits under both policies for approximately two and on half years, when he was disabled by his addiction, from March 2003 through August 2005, during which time he was afforded all rehabilitation efforts, the aim of which is to return an addict to a rehabilitated state so that he may be able to function as a recovering addict. By all accounts, the record reveals that Dr. Berry has been successfully rehabilitated as a result of these efforts.