[Civ. No. 31384. Second Dist., Div. Two. Jan. 13, 1970.]

GEORGE H. ELLIANO, Plaintiff and Appellant, v.
ASSURANCE COMPANY OF AMERICA, Defendant and Respondent.

## COUNSEL

James A. Hayes for Plaintiff and Appellant.

Long & Levit and Lawrence B. Haile for Defendant and Respondent.

## OPINION

**HERNDON, J.**—Plaintiff and appellant George H. Elliano brought this action to recover from respondent, Assurance Company of America, the amount of a fire damage loss involving his residence. After appellant had completed his presentation of evidence, the trial court, upon motion by respondent made pursuant to Code of Civil Procedure section 631.8, rendered judgment determining that the action was barred by appellant's failure to make timely proof of loss and by his failure to commence the action on his claim within 12 months following the date of the fire.

The standard form fire insurance policy is required by California law to contain provisions (1) requiring the insured to render to the insurance company within sixty days after the loss a formal proof of loss; and, (2) stating that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court . . . unless commenced within 12 months next after inception of the loss." (Ins. Code, §§ 2070, 2071.)

It is conceded that no formal proof of loss was made and, since two years and seven months elapsed between the date of the fire and the date upon which this action was filed, appellant has recognized that it was necessary for him to rely upon the doctrines of waiver and estoppel in order to avoid the bar of the contractual limitations prescribed by the statute.

The trial court, upon reviewing the evidence introduced by appellant, announced its findings that he had failed to present proof of loss and to file his action within the prescribed periods and, further, that the defendant had not waived these requirements and was not estopped to rely upon them. Formal findings of fact and conclusions of law to that effect were thereupon filed and judgment for defendant was entered accordingly.

Appellant on this appeal contends that the uncontradicted evidence introduced by him establishes as a matter of law that the findings of the trial court determining the issues with respect to waiver and estoppel are unsupported and erroneous. We have concluded that the record supports appellant's contention. ■■■ We first hold that the undisputed evidence demonstrates that the requirements with respect to the furnishing of formal proof of loss were waived by the insurer.

The provisions of the Insurance Code declare that the failure of the insurer to object to delay by the insured in submitting proof of loss[1] or to defects in the contents thereof[2] constitutes a waiver of formal proof of loss.

---

[1] Insurance Code section 554 provides: "Delay in the presentation to an insurer of notice or proof of loss is waived, if caused by an act of his, or if he omits to make objection promptly and specifically upon that ground."

[2] Insurance Code section 553 provides: "All defects in a notice of loss, or in pre-

It is, moreover, well established that the insurer's failure to object or to repudiate liability for lack of sufficient proof of loss constitutes a waiver. As stated in *Estrada* v. *Queen Ins. Co.,* 107 Cal.App. 504, 510 [290 P. 525]: "By making no objection on account of the absence of notice and preliminary proof, and going on to a matter that was concerned with the payment of the claim, and had no connection with complying with the provision calling for preliminary proof of loss within sixty days, we think the company, through its authorized agent, waived this provision and that the insured had a right to rely upon this manifestation of intention to dispense with the preliminary formalities. (*Carroll* v. *Girard F. Ins. Co.,* 72 Cal. 297 [13 Pac. 863].)" The holdings in *Dickinson* v. *General Acc. Fire & Life Assur. Corp.,* 147 F.2d 396, and *Lagomarsino* v. *San Jose etc. Title Ins. Co.,* 178 Cal.App.2d 455, 459-460 [3 Cal.Rptr. 80], are to the same effect.

In the present case appellant testified that the fire occurred one night while he was not at home and that on the next day he notified respondent's agent. Within a few days respondent's insurance adjuster contacted appellant and obtained his signature on a document bearing the address of the insured property, and requested that appellant submit a written estimate of replacement cost for the dwelling and a list of belongings damaged. The adjuster accepted the written estimate and the eight-page itemization of losses which appellant made out and submitted in his own handwriting approximately two weeks later. As we shall point out in more detail hereinafter, respondent and appellant entered into settlement negotiations in an effort to reach an agreement as to the amount of the loss. At no time was appellant requested to submit formal proof of loss, nor did respondent ever deny that appellant had sustained a substantial loss covered by the policy.

"In the absence of fraud on the part of an insured, a court should carefully examine the evidence regarding the failure to furnish proof of loss by fire so as to avoid a forfeiture of legitimate claims merely because of technical omissions. [Citation.]" (*Francis* v. *Iowa Nat. Fire Ins. Co.,* 112 Cal.App. 565, 571 [297 P. 122].)

Respondent's second ground of defense in this case is based upon the provision of the standard form fire insurance policy prescribed by Insurance Code section 2071 limiting the time for the commencement of the action. It is agreed, as we have said, that the instant action was not commenced within 12 months "after inception of the loss" as required by the standard policy. However, appellant undertook by his pleadings and proof

---

liminary proof thereof, which the insured might remedy, and which the insurer omits to specify to him, without unncesssary delay, as grounds of objection, are waived."

to establish that respondent by its conduct in the premises waived and is now estopped to assert the 12-month limitation. We have concluded that the evidence introduced by appellant establishes facts which operate as a matter of law to require a holding in favor of appellant's contention.

The undisputed evidence proves the following facts: (1) that upon issuing the contract of insurance respondent sent the original of the policy to the holder of a mortgage on the insured premises and sent appellant an eight-page printed document bearing the designation "HOMEOWNERS POLICY CALIFORNIA MEMORANDUM OF INSURANCE"; (2) that this document has the appearance of a facsimile of the policy and purports to set forth all the essential terms thereof but contains no reference to the 12-month limitation for the commencement of an action on the policy; (3) that appellant was never informed of said period of limitation until long after its expiration; (4) that after receiving notice of the loss respondent participated with appellant in negotiations looking to a compromise settlement of the amount of his claim; (5) that these negotiations extended over a period beyond the 12 months following the loss; (6) that respondent at all times admitted that appellant had suffered a loss covered by the policy but never gave him any indication of its intention to rely upon the contractual limitation upon the time within which he might file suit upon his claim.

We conclude that the principles of law governing the application of the doctrines of waiver and estoppel which have been stated and applied in factually similar precedents dictate a reversal of the instant judgment. In *Morgan* v. *International Aviation Underwriters, Inc.*, 250 Cal.App.2d 176, 179 [58 Cal.Rptr. 164], we observed: "It is elementary and well settled that waiver and estoppel are two distinct and different doctrines. Both are of equitable origin and both are frequently invoked to rescue justice in situations where the party seeking to take refuge behind the bar of a statute of limitations, or a contractual limitation of the same nature, has conducted himself in such a manner that to apply the bar in his favor would shock the conscience of equity. (Cf. *Smith* v. *Anglo-California Trust Co.*, 205 Cal. 496 [271 P. 898].)"

The elements essential to the application of these doctrines are sufficiently indicated by their definitions. As stated in *Altman* v. *McCollum*, 107 Cal.App.2d Supp. 847, 861-862 [236 P.2d 914]: "Although waiver and equitable estoppel are not always distinguished in the cases, they rest upon different legal principles. There may be an equitable estoppel where there is no waiver in the technical sense. Waiver is a voluntary relinquishment, expressly or impliedly, of a known right and depends upon the intention of one party only. Equitable estoppel is based upon the fundamental principle that 'one's conduct has induced another to take such a position that he will be injured if the first party is permitted to repudiate his acts.'

(*Bastanchury* v. *Times Mirror Co.,* 68 Cal.App.2d 217, 240 [156 P.2d 488].)

█ " 'An estoppel may arise also from silence as well as from words or conduct. But this is only where there is a duty to speak, and where the party upon whom such duty rests has an opportunity to speak, and, knowing that the circumstances require him to speak, remains silent.' (10 Cal.Jur. at pp. 631, 632; see, also, *People* v. *Ocean Shore Railroad Inc.,* 32 Cal.2d 406, 407, 421-422 [196 P.2d 570, 6 A.L.R.2d 1179]; *Merry* v. *Garibaldi,* 48 Cal.App.2d 397, 401 [119 P.2d 768]; *Crittenden* v. *McCloud,* 106 Cal. App.2d 42, 48 [234 P.2d 642].

" 'It is not necessary that the duty to speak should arise out of any agreement, or rest upon any legal obligation in the ordinary sense. Courts of equity apply in such cases the principles of natural justice, and whenever these require disclosure they raise the duty and bind the conscience and base upon the omission an equitable forfeiture to the extent necessary to the protection of the innocent party.' (10 Cal.Jur. p. 632.)"

In *Lagomarsino* v. *San Jose etc. Title Ins. Co., supra,* 178 Cal.App.2d 455, a comparable factual situation was presented. The court there stated at pages 461-462: "The courts have recognized estoppels in circumstances comparable to these. Thus the District Court of Appeal in *Gaglione* v. *Coolidge* (1955) 134 Cal.App.2d 518 [286 P.2d 568], expressed the opinion: 'It is well settled that where delay in commencing an action is induced by the conduct of the defendant, he cannot avail himself of the defense of the statute. [Citations.] In *Industrial Indem. Co.* v. *Industrial Acc. Com.,* 115 Cal.App.2d 684, 690 [252 P.2d 649], it is said that "Acts or conduct which wrongfully induce a party to believe an amicable adjustment of his claim will be made, may create an estoppel against pleading the statute. (Citations.) An insurer cannot hold out a hope of amicable adjustment of a claim and thus delay action against it, and then plead the delay caused by its own conduct as a defense to an action when brought." ' (P. 527.) *Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399 [154 P.2d 399], applies an estoppel to an insurance situation, saying the statute may be suspended by 'fraudulent concealment by the defendant of the facts upon which a cause of action is based . . . or mistake as to the facts constituting the cause of action. . . .

"[E]quitable considerations . . . are applicable whether defendant violated a legal duty in failing to disclose its intention to set up this technical defense, or whether it is now merely seeking the aid of a court in sustaining a plea that would enable it to obtain an unconscionable advantage and enforce a forfeiture.' (P. 411.)"

*O'Brien* v. *Country Mut. Ins. Co.,* 105 Ill.App.2d 21 [245 N.E.2d 30],

and *Agricultural Ins. Co. of Watertown, N.Y.* v. *Iglehart* (Okla) 386 P.2d 145, are representative of decisions from other jurisdictions holding that an insurer may waive the statutory limitations on the time for filing of suit by admitting liability and engaging in settlement negotiations which continue beyond the statutory period.

We have found no case, and counsel have cited none, which deals with the effect to be given a memorandum of insurance possessing the content and the appearance of that which the insurer furnished to the insured in this case. A page-by-page comparison of the memorandum with the original policy reveals that the two documents are virtually identical except for the omission from the memorandum of the page on which the provision for the 12-month limitation is printed.

All of the detailed recitals and schedules indicating coverages and limits of liability, the premium charged, the mortgagee clause, the "all physical loss" building endorsement, a section entitled "Homeowners Policy—Form B" and provisions entitled "Extensions of Coverage," "Limitations of Coverage," and numerous other provisions are couched in exactly the same language both in the memorandum and in the policy.

Respondent emphasizes the fact that in its caption this document was denominated a "Memorandum" and refers to the language of its penultimate sentence which states that "This Memorandum is for information only; it is not a contract of insurance but attests that a policy as numbered herein, and as it stands on the date of this certificate, has been issued by the company."

However, it is to be noted that the memorandum contains no statement designed to give notice that it does not contain all of the material provisions of the contract. In view of its content and arrangement, this memorandum presented the appearance of a duplicate of the policy. Its evident purpose was to inform the insured of the material terms of the contract and the extent of its coverage. In these circumstances we hold that the parties to this action stand in essentially the same position as if respondent had delivered to appellant either an original or an exact copy of a policy which omitted the limitation provision here in question.

Courts in other states have considered the question which arises when the policy delivered to the purchaser of the insurance fails to contain the standard form clause limiting the period for bringing an action to the 12-month period (*Conte* v. *Yorkshire Ins. Co. of N.Y.*, 5 Misc.2d 670 [163 N.Y.S.2d 28]), or when the insured, for reasons beyond his control, does not have immediate access to the policy (*North River Ins. Co.* v. *Belcher* (1930) 155 Va. 588 [155 S.E. 699]; *Fredericks* v. *Farmers Reliance Ins. Co. of N.J.* (1963) 80 N.J.Super. 599 [194 A.2d 497, 500]).

These courts have concluded that the standard policy period of limitations, although statutory, is not a matter with which an insured necessarily is charged with knowledge in all circumstances.

In *Fredericks* v. *Farmers Reliance Ins. Co. of N.J., supra,* the trial court held that the insured was chargeable with notice of the statutorily prescribed limitation period to the same extent that a tort claimant is chargeable with knowledge of the general statute of limitations period. In reversing the trial court the appellate court made the following observation: "A member of the public is chargeable with knowledge of any general statute of limitations, including the [written] contract period. But we think that the insured party under an insurance contract is entitled to look to his policy for notice of any shorter limitation period set forth therein as a condition of his right to recover thereon. The Legislature has not simply and unqualifiedly created a 12-month statute of limitations for claims on fire policies, as it has . . . for contracts generally. It has directed the *inclusion* of a 12-month limitation condition *in the policy issued.* The intent obviously is that the insured may be apprised of all his rights, including that limitation upon them, by reading the policy. Any conduct properly invocable against the company's pleading the limitation condition, under general estoppel principles, should therefore still bar it without regard to the fact that the limitation condition in a fire policy is dictated by statute." (*Fredericks* v. *Farmers Reliance Ins. Co. of N.J., supra,* 194 A.2d 497, 500.)

In *Conte* v. *Yorkshire Ins. Co. of N.Y., supra,* 163 N.Y.S.2d 28, the New York court concluded that the standard policy form limitation, which was considerably shorter than the general statute of limitations, should not have been applied to bar the claim of the insured. The following indicates the reasoning of the court: "It is the conclusion of this court that the defendant is estopped from relying on the short statute of limitations, applicable generally to standard fire insurance policies of this state, and which would have been available as a defense, if the policy before us had included the necessary provision.

"The history of statutory insurance clearly indicates that standard policies were made obligatory upon insurance companies to protect ingenuous insureds against the refinements and legalisms devised by the companies. Whenever the Legislature stepped into this area its purpose was to afford the insured more protection and less obfuscation (cf. 3 Richards on Insurance, 5th ed., sec. 497, et seq.). We are on firm ground then when we say that primarily, standard policies are for the safeguarding of policy holders.

"Of course, if for any reason at all, apparent or ulterior, an insurer chooses to waive benefits conferred by the statutes providing for uniform

policies, this may be done. Thus, as to the specific provisions for a short statute of limitations, it has been said:

" 'The policy provision being in derogation of the general statute of limitation, the courts are not slow in holding the company estopped from insisting upon it, where the promise or conduct of the company has induced the delay.' (*Idem*, § 577, p. 1875)." (*Conte* v. *Yorkshire Ins. Co. of N.Y.*, *supra*, 163 N.Y.S.2d 28, 29.)

We conclude this opinion with a brief summary of the undisputed evidence proving that the settlement negotiations in this case extended substantially beyond the 12-month period following the fire. The fire which caused the loss claimed in this case occurred on October 9, 1958. Appellant promptly notified respondent's agent and a few days later respondent's adjuster contacted him. Appellant and the adjuster met and discussed settlement on several occasions during the latter part of 1958. Early in 1959, they met in the office of an attorney who was representing appellant in another action. No agreement was reached at this meeting which ended with the adjuster's statement that he would turn the matter over to the carrier's attorneys.

Thereafter appellant made several telephone calls to various representatives of the carrier but in each instance was told that the matter was being handled by the attorneys. Under date of April 28, 1960, appellant addressed a letter to respondent's attorneys in which he stated his willingness to accept $18,000 in settlement of his claim. Respondent's attorneys replied to this offer in a letter dated May 10, 1960, reading as follows:

"With respect to your letter of April 28, 1960, you will recall that the adjuster originally arrived at the following figures on your fire loss:

| | |
|---|---|
| "Dwelling | $8,804.64 |
| "Other realty | 1,008.00 |
| "Personal property | 2,646.50 |

However, you expressed dissatisfaction with these figures and after considerable negotiation you were offered $10,400.00 on the dwelling, an increase of some $1,600.00 over the original offer. This amounts to a total settlement of $14,054.50.

"Under the circumstances we feel that this offer is fair in every respect and more than meets you half way. We must therefore advise you that the figures that you mention in your letter are unacceptable and that the company's highest offer is the above mentioned total."

Under date of September 30, 1960, appellant addressed a letter to respondent's San Francisco office restating his demand for $18,000 and

informing the company that he had employed attorney James Hayes to represent him. Respondent made no response to this letter and there were no further communications between the parties prior to the filing of suit on May 11, 1961.

It bears repetition that respondent never explicitly declared that it regarded settlement negotiations as terminated nor did it at any time inform appellant that it intended to rely upon any limitation of time within which action upon his claim might be commenced.

The judgment is reversed, and the appeal from the order denying the motion for a new trial is dismissed.

Roth, P. J., and Fleming, J., concurred.