**Alexander P. DAMASCUS, D.D.S., Plaintiff,**

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, et al., Defendants.**

**No. C–95–4357 WHO.**

United States District Court, N.D. California.

June 21, 1996.

Alexander P. Damascus, D.D.S., Santa Clara, CA, In Pro Per.

James H. Fleming, James H. Fleming & Associates, San Francisco, CA, for Defendants.

## OPINION AND ORDER

ORRICK, District Judge.

In this insurance action, plaintiff Alexander P. Damascus ("Damascus") sues defendants Provident Life and Accident Insurance Company ("Provident") and Lee Francis LaMarca ("LaMarca"), its agent, claiming Provident failed to pay benefits allegedly due him under the provisions of an accident and sickness policy requiring Provident to pay him indemnity "[if] Injuries or Sickness results in Total Disability," which is defined as "inability to perform the duties of your occupation." (Harnsberger Decl., Ex. A at 5.) Provident now moves for summary judgment, and for

the reasons hereinafter stated, the Court grants summary judgment for Provident on all causes of action.[1] The Court also grants summary judgment, *sua sponte*, for LaMarca on all causes of action.

## I.

In 1980, Provident issued Accident and Sickness Policy No. 6PC–454284 ("the policy") to Damascus. (*Id.*, Ex. A.) The policy provides for insurance against total disability resulting from "(1) accidental bodily injuries . . . or (2) sickness or disease. . . ." (*Id.* at 1.) The benefits provision of the policy provides, in relevant part, "If Injuries or Sickness result in Total Disability, the Company will pay periodically during the continuance of such Total Disability, indemnity at the rate of the Monthly Benefit for Total Disability shown in the Policy Schedule. . . ." (*Id.* at 4.) Total Disability is defined as "your inability to perform the duties of your occupation." (*Id.* at 5.)

Damascus is a dentist. On September 10, 1990, an Accusation was filed against him with the California Board of Dental Examiners (the "Board"), seeking to revoke his license to practice dentistry because of mental illness and grossly inappropriate care of patients, pursuant to §§ 820 and 822[2] of the California Business and Professions Code. (Harnsberger Decl., Ex. J.) On July 31, 1991, the Board placed Damascus on probation for a five-year period during which Damascus was permitted to practice dentistry only under the supervision of another dentist. (*Id.*, Ex. K at 5–6.) The Board also required Damascus to seek treatment from a psychotherapist and to continue treatment until the Board deemed that no further treatment was necessary. (*Id.* at 5.) The Board stated that "it is clear that [Damascus] does suffer from a mental illness which interferes with his

judgment." (*Id.* at 3–4.) This probation order was stayed pending appeal. On May 25, 1994, the California Court of Appeal affirmed the Board's probation order of July 31, 1991, in an unpublished opinion, and vacated the stay. (Fleming Decl., Ex. H.)

On May 31, 1994, another Accusation was filed against Damascus with the Board, seeking to revoke Damascus' license to practice dentistry for repeated acts of negligence and unprofessional conduct in violation of §§ 1670 and 1680(p) of the California Business and Professions Code.[3] (Harnsberger Decl., Ex. L.) Although this Accusation referred to the Board's prior probation order, it did not seek to revoke Damascus' dental license on the grounds of mental illness. The Accusation alleged that Damascus performed defective root canal procedures on two patients in 1992 resulting in mechanical perforation of the pulpal wall, but did not notify the patients that any problem had occurred, and did not refer them to an endodontist. In one of these cases, Damascus allegedly provided the patient with thirty-five percodan and twenty-five penicillin VK tablets without informing the patient of proper use of the medications.

On July 11, 1995, the Board revoked Damascus' dental license, effective August 11, 1995. (*Id.*, Ex. M.) The July 11, 1995, order expressly stated that "The Board's order in the prior matter . . . did not involve unprofessional conduct, acts of gross negligence or repeated negligent acts. Therefore, the prior order was not considered in formulating the appropriate penalty or disposition in this matter." (*Id.* at 4.) The Board found Damascus' conduct to constitute gross negligence, unprofessional conduct, and excessive prescribing of drugs. (*Id.* at 5.)

By a letter dated June 1, 1995, Damascus wrote to Provident requesting benefits due

---

**1.** The Court exercises its discretion to hear Provident's motion for summary judgment despite the parties' failure to submit a joint statement of undisputed facts.

**2.** Section 822 of the California Business and Professions Code provides that if a licensing agency determines that a licensee is mentally ill, it may revoke or suspend the license, place the licensee on probation, or take other action that it deems proper. Section 820 gives the licensing

agency the authority to require the licensee to submit to a psychological examination.

**3.** Section 1670 of the California Business and Professions Code provides for revocation of a license for unprofessional conduct, incompetence, gross negligence, or repeated acts of negligence. Section 1680(p) provides that unprofessional conduct may consist of excessive prescribing or administering of drugs or treatment.

under the policy because "The State Board of Dental Examiners, of the State of California has determined that I suffer from a mental disability that prevents me from practicing dentistry." (*Id.*, Ex. B.)

On August 8, 1995, Damascus filed a complaint against Provident and Lee Francis LaMarca[4] in the Superior Court for the County of Santa Clara, alleging claims for breach of contract, bad faith, unfair claim settlement practices, breach of statutory duties, conspiracy, fraud, errors and omissions in the sale of insurance, and negligent and intentional infliction of emotional distress. On December 6, 1995, that complaint was removed to this Court.

Provident now moves for summary judgment on the ground that Damascus' license revocation was due to his negligence and unprofessional conduct, and not due to mental illness; thus, no benefits are due under the policy.

## II.

### A.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has made this showing, the nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)). "When the moving party has carried its burden under Rule 56(c), its opponent

must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### B.

 Damascus' cause of action alleges that the Board has held that he has a mental disability preventing him from practicing dentistry and, thus, Provident's failure to pay benefits on his insurance policy constitutes breach of contract. (Compl. ¶¶ 11–16.) In insurance disputes, the burden is on the insured to prove all facts necessary to show that his claim falls within the terms and conditions of coverage. *Garvey v. State Farm Fire & Casualty Co.*, 48 Cal.3d 395, 406, 257 Cal.Rptr. 292, 298, 770 P.2d 704, 710 (1989).

### 1.

Provident argues that Damascus cannot possibly prove that he is totally disabled within the meaning of the policy because the Board revoked Damascus' license for gross negligence and unprofessional conduct, *not* for mental illness. (Harnsberger Decl., Ex. M at 4, 5, 7.) Provident further points to the following evidence as proof that Damascus' mental illness, if any, was not the cause of his Total Disability, as defined in the policy:

1. The Board's 1991 probation order did not find Damascus unfit to practice dentistry, but required only that he practice dentistry under supervision for a probationary period. (*Id.*, Ex. K at 5–6.)

2. Damascus continued to practice dentistry after the probationary order was issued, and only stopped practicing when the Board revoked his license for gross negligence and unprofessional conduct. (*Id.*, Ex. M.)

3. During the 1991 hearings before the Board, Damascus testified that he was not

4. LaMarca was the Provident agent who signed Damascus's 1980 insurance application.

mentally ill. (Fleming Decl., Ex. A, Hr'g Tr., July 2, 1991, at 5:23–24.)[5]

4. During the 1991 hearings, Damascus' witness, Dr. John Stewart McGovern, testified that he did not believe that Damascus suffered from an emotional disorder or mental incompetence that would interfere with his ability to practice his profession. (*Id.*, Ex. B, Hr'g Tr., Apr. 11, 1991, at 137:3–138:5.)

5. On August 23, 1991, Damascus filed a petition for administrative mandamus and asserted under oath that the evidence did not establish that he had a mental illness affecting his ability to practice dentistry. (*Id.*, Ex. C at ¶ 6, Pet. for administrative mandamus; and Ex. D at ¶ 4(e), Decl. of Alexander Damascus.) In support of his petition, Damascus submitted declarations from three doctors stating that he did not suffer from mental illness. (*Id.*, Ex. E, Decl. of Donald L. Tasto, Ph.D.; Ex. F, Decl. of Donald Lunde, M.D.; and Ex. G, Decl. of John Stewart McGovern, Ph.D.)

6. In Damascus' statement of claim, filed with Provident in June 1995, he listed the date of sickness as August 12, 1994, and the nature and details of sickness as "Diagnosis of Paranoid Personality made by Dental Board in 1991 became effective when appeal process ended." (Harnsberger Decl., Ex. D.) In answer to the question, "What injuries result from accident?", Damascus responded, "No injury—just court declaration." (*Id.*)

7. The Attending Physician's Statement submitted to Provident by Damascus in October 1995 states that Dr. McGovern, Damascus' Board-approved psychotherapist, did not believe that Damascus suffered from Paranoid Personality Disorder, despite the Board's diagnosis. (*Id.*, Ex. F.)

8. The only evidence submitted by Damascus in support of his insurance claim that showed that he ever suffered from a mental illness was a 1990 report from Dr. Gary S. Nye, which was five years old at the time it was submitted to Provident. (*Id.*, Ex. E.)

Provident argues that Damascus suffers only from a legal disability imposed by the Board, and not from a mental disability that prevents him from performing the duties of his occupation. "It is a general rule that disability insurance policies ... provide coverage for *factual disabilities* (i.e., disabilities due to a sickness or injury) and not for legal disabilities." *Goomar v. Centennial Life Ins. Co.*, 855 F.Supp. 319, 325 (S.D.Cal.1994) (*citing* 15 George J. Couch, *Cyclopedia of Insurance Law*, § 53:41 at 76 (2d ed. 1983)), *aff'd*, 76 F.3d 1059 (9th Cir.1996).

In *Goomar*, plaintiff sued an insurance company for failure to pay benefits on a disability policy that contained a definition of Total Disability nearly identical to that at issue in this case. Goomar's license to practice medicine was revoked because of his history of molesting patients. Later, Goomar began experiencing psychiatric difficulties, and he submitted a claim under his disability policy, claiming that his psychological disability led to the conduct that caused the loss of his medical license and inability to work. The Ninth Circuit affirmed the district court's grant of summary judgment in favor of the insurer, holding that Goomar had failed to present a material issue of fact as to whether his alleged sickness caused the loss of his license. *Id.* at 1063.[6]

The key difference between this case and *Goomar* is that in *Goomar*, plaintiff had not been previously adjudged mentally ill by the board that revoked his license. Thus, the obvious argument for Damascus to make is

---

**5.** Because a California appellate court affirmed the Board's determination that Damascus suffered from mental illness in 1991, the Court gives no weight to Damascus's contemporaneous protests that he was *not* mentally ill.

**6.** Courts have also rejected disability claims from persons who were incarcerated for illegal activity alleged to have been caused by mental illness, on the ground that their inability to work was due to their incarceration and not to their mental illness. *See Pierce v. Gardner*, 388 F.2d 846, 847–

48 (7th Cir.1967), *cert. denied*, 393 U.S. 885, 89 S.Ct. 197, 21 L.Ed.2d 162 (1968); *Bertram v. Secretary of HEW*, 385 F.Supp. 755, 757 (E.D.Wis.1974); *Waldron v. Secretary of HEW*, 344 F.Supp. 1176, 1180 (D.Md.1972); *Massachusetts Mut. Life Ins. Co v. Ouellette*, 159 Vt. 187, 617 A.2d 132, 134–35 (1992). In these cases, it appears that mental illness was not raised as a defense in the action that resulted in incarceration.

that his mental illness in 1990–91 *caused* the gross negligence and unprofessional conduct that ultimately resulted in revocation of his license. But Damascus does not make this argument and, indeed, does not present any evidence that he suffered from any mental illness after 1990.

Damascus' first argument is that the Board expressly incorporated its 1991 decision finding Damascus mentally ill in the Accusation that led to the Board's 1995 revocation order. Thus, Damascus argues that the Board would never have revoked his license but for its earlier determination that he was mentally ill. The Board's 1995 revocation order, however, expressly states that the Board's prior order was *not* considered in reaching its decision to revoke Damascus' license. (Harnsberger Decl., Ex. M at 4.) Moreover, in the 1995 proceedings, Administrative Law Judge Robert Coffman repeatedly stated that the Board's prior order had little or no relevance to the current matter, and refused to admit psychiatric testimony. (Fleming Supp. Decl., Ex. 1, Hr'g Tr., May 23, 1995, at 287–300; Ex. 2, Hr'g Tr., May 25, 1995, at 116:2–118:15.) [7]

Damascus' mere argument that the Board lied when it stated that it was not revoking his license for mental illness does not create a genuine issue of material fact requiring the case to go to trial. [8] *See Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

Damascus then appears to argue [9] that there is a dispute over the definition of "Total Disability" under the policy that requires that the case go to trial. He claims that there is no definition of "Injuries or Sickness" in the policy. The policy, however, clearly states that the policy insures against loss resulting from "(1) accidental bodily injuries occurring while this policy is in force, hereinafter referred to as Injuries; or (2) sickness or disease which is first manifested while this policy is in force, hereinafter referred to as Sickness." (Harnsberger Decl., Ex. A at 1.) The policy lists a monthly benefit for "Total Disability." (*Id.* at 3.) The policy defines "Total Disability," in relevant part, as "your inability to perform the duties of your profession." (*Id.* at 5.) The policy also provides that:

> If Injuries or Sickness result in Total Disability, the Company will pay periodically during the continuance of such Total Disability, indemnity at the rate of the Monthly Benefit for Total Disability shown.... Indemnity will not be paid for disability during any period of time that you are not under the care and attendance of a Physician.

(*Id.* at 3.) All of Damascus' arguments that Provident has taken inconsistent positions on the meaning of the policy language are, in fact, belied by the language of the policy itself. "Injuries," "Sickness," and "Total Disability" are all defined substantially as stated by Provident in its various communications with Damascus. Damascus' (and his counsel's) failure to actually read the definitions contained in the policy does not create a triable issue of fact as to how the policy defines various terms.

Damascus seems to be arguing that because (1) the Board found him to be mentally disabled in 1991, and (2) the Board revoked his license to practice dentistry in 1995, he is totally disabled within the meaning of the policy. Damascus ignores the element of

---

**7.** Damascus also argues that the incidents of negligence alleged against him were settled for less than the minimum amount required to be reported to the Board and, thus, were insufficient to justify revocation of his license, but offers no factual or legal support for this argument.

**8.** Damascus also makes much out of a court reporter's transcription error. According to the transcript of the May 23, 1995, hearing before the Board, the District Attorney made a comment "to explain why there is a petition to revoke

probation." (Fleming Supp. Decl., Ex. 1, Hr'g Tr. at 288:7–8). The surrounding testimony, however, clearly demonstrates why there was *not* a petition to revoke probation. Indeed, Provident submits a declaration from the district attorney attesting that she actually explained "why there is *not* a petition to revoke probation." (Tiedemann Decl. ¶ 3.) No petition to revoke Damascus' probation was ever filed. (*Id.* at ¶ 4.)

**9.** Parts of plaintiff's brief are close to incomprehensible.

causation that is clearly set out in the language of the policy. The policy provides for benefits "[i]f Injuries or Sickness *result in* Total Disability...." (*Id.* at 3 (emphasis added).) Damascus continued to practice dentistry after the Board's 1991 order finding him mentally ill. (*Id.,* Ex. M.) At oral argument, Damascus argued that prior to the Board's 1995 revocation order, he was out of work for a year. Damascus, however, presented no evidence whatsoever that this period of unemployment was caused by mental illness. Thus, Damascus has not shown a triable issue of fact as to whether his mental illness resulted in his Total Disability, i.e., his inability to practice his profession. The Board's 1995 order revoking Damascus' license, which expressly stated that it did not rely on the Board's 1991 order, *did* result in Damascus' inability to practice his profession—but because of his gross negligence and unprofessional conduct, not because of Injuries or Sickness.

The Court finds that Damascus has not met his burden of showing a triable issue of fact as to whether he was totally disabled within the meaning of the policy.

### 2.

■ Provident also argues that Damascus failed to submit a timely proof of loss in support of his claim for benefits under the policy. The policy provides that:

> Written proof of loss must be furnished to the Company ... within 90 days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than 1 year from the time proof is otherwise required.

(*Id.,* Ex. A at 6.) Provident asserts that because Damascus has submitted *no* evidence that he suffered from a mental illness in 1994 that prevented him from practicing dentistry, summary judgment should be granted for Provident.

Damascus asserts that his injury dates from August 12, 1994. (*Id.,* Ex. D.) The first letter from Damascus asserting a claim, that has been submitted to the Court, is dated June 1, 1995, more than ninety days after August 12, 1994. (*Id.,* Ex. B.) That letter refers to an earlier letter, but there is no earlier letter before the Court. Damascus' first claim form is dated June 28, 1995. (*Id.,* Ex. D.) That claim form contains a blank Attending Physician's Statement. (*Id.*) With that claim form, Damascus submitted a five-year-old letter from Dr. Gary S. Nye, dated June 20, 1990, which stated that, at that time, Damascus suffered from a psychiatric disorder requiring psychiatric treatment. (*Id.,* Ex. E at 15.) Nye recommended that Damascus not practice dentistry, because he "lacks the judgment necessary to practice his profession, particularly in an unstructured setting." (*Id.*) Damascus did not submit any current medical evaluations. He submitted a supplementary statement of claim, dated September 27, 1995, which included an attending physician's statement from Dr. John S. McGovern, dated October 10, 1995. (*Id.,* Ex. F.) Dr. McGovern stated that:

> An Administrative Law Judge held that Dr. Damascus has a Paranoid Personality Disorder (DMS–III–R 301.00), and the Dental Board affirmed. I am the treating psychotherapist, approved by the Dental Board to treat Dr. Damascus. My Psychological Test Report did not support a diagnosis of Paranoid Personality Disorder but that opinion did not prevail. I have continued to provide the Board-mandated treatment.

(*Id.,* Ex. F, Addendum at ¶ 1.) In answer to the question: "When can the patient resume part time/full time work?", Dr. McGovern responded: "When the Dental Board reinstates patient's license." (*Id.,* Ex. F at 3.) Although Damascus did submit evidence showing that he suffered from mental illness in 1990, he has submitted no documentation to Provident even suggesting that he suffered from mental illness in 1994. Nor has he provided the Court with such documentation.

Moreover, Provident requested additional information about Damascus from Dr. Donald T. Lunde on August 5, 1995. (*Id.,* Ex. G.) Dr. Lunde provided notes of interviews with

Damascus on three dates in 1990 and on one date in 1995. (*Id.*, Ex. H.) Dr. Lunde's notes from a May 19, 1995, "Mental Status Examination" state: "Oriented. No psychotic thinking. *No* paranoid delusions or trends. No indications of M–D illness. No sx depression. Above average intelligence. Fund of information consistent with intelligence. Sense of humor intact. No change in condition since previous exams." (*Id.*) Dr. Lunde had submitted a declaration on Damascus' behalf in 1991 in which he stated under penalty of perjury that he had found no evidence that Damascus had a mental illness or condition that would affect his practice of dentistry. (Fleming Decl., Ex. F at ¶ 3.)

Thus, the only medical evidence before the Court from the 1994–1996 period is that Damascus was *not* mentally ill during that period. Viewing the evidence in the light most favorable to Damascus, as the Court must, a reasonable jury could not find that Damascus had submitted proof that he was totally disabled due to mental illness in 1994 or later.

Damascus argues that Provident never notified him that he would be denied benefits due to an untimely claim. Thus, Damascus argues, Provident·has waived any argument that it does not owe benefits to Damascus because of his failure to comply with the policy's proof of loss provisions. "Delay in the presentation to an insurer of notice or proof of loss is waived, if caused by an act of his, or if he omits to make objection promptly and specifically upon that ground." Cal.Ins. Code § 554. "It is, moreover, established that the insurer's failure to object or to repudiate liability for lack of sufficient proof of loss constitutes a waiver." *Elliano v. Assurance Co.*, 3 Cal.App.3d 446, 449, 83 Cal.Rptr. 509, 511 (1970).

■ In *Elliano*, however, the insurer never even requested that the insured submit a formal proof of loss. *Id.* Here, Damascus' own counsel attaches to his declaration a copy of a letter from Provident, dated October 24, 1995, notifying counsel of the proof-of-loss provision and requesting that he "provide us with a written explanation as to why Dr. Damascus is filing late notice of claim." (Warble Decl., Ex. C.) Counsel's assertion

at oral argument that Provident waived the proof of loss requirement because no one told Damascus he had to file a written proof of loss is not supported by evidence or law. Damascus' failure to read the proof of loss clause in his policy does not excuse him from complying with it.

The Court finds that there is no triable issue of fact as to whether Provident waived its right to require that Damascus submit a timely proof of loss, and that there is no evidence sufficient for a jury to conclude that Damascus was totally disabled due to mental illness in 1994 or later.

**3.**

The Court grants summary judgment for Provident on Damascus' first claim for breach of contract.

**C.**

Because Damascus has not shown a triable issue of fact as to whether he is disabled within the meaning of the policy, his remaining claims also fail.

**1.**

■ Damascus' second claim alleges that Provident is liable for breaching the implied covenant of good faith and fair dealing by failing to pay him disability benefits pursuant to the policy. (Compl. ¶¶ 17–21.) A court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, even if the court concludes the claim is payable under the policy terms, so long as there existed a genuine issue as to the insurer's liability. *Franceschi v. American Motorists Ins. Co.*, 852 F.2d 1217, 1220 (9th Cir.1988) (*citing Safeco Ins. Co. v. Guyton*, 692 F.2d 551, 557 (9th Cir.1982)). Here, Damascus did not even show a triable issue as to the reasonableness of Provident's denial of benefits. Thus, the Court finds that there was no bad faith by Provident as a matter of law.

**2.**

■ Damascus' third claim alleges that Provident delayed and failed to pay benefits and resisted and thwarted his attempts to file and prove his claim. (Compl. ¶¶ 22–24.)

Damascus' fourth claim alleges that Provident breached various statutory duties in the course of its dealings with Damascus. (*Id.* ¶¶ 25–27.) The California Supreme Court, however, held that there is no private right of action in California for unfair claim settlement practices in violation · of statutory duties. *Moradi–Shalal v. Fireman's Fund Ins. Cos.,* 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58 (1988). Thus, the Court grants summary judgment for Provident on these claims as well.

### 3.

■ Damascus' fifth claim alleges that defendants conspired to delay or deny to Damascus the benefits he is entitled to under the policy. (Compl. ¶¶ 28–30.) Conspiracy, however, is not an independent tort. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510–11, 28 Cal.Rptr.2d 475, 478, 869 P.2d 454, 457 (1994). "[T]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act." *Kidron v. Movie Acquisition Corp.,* 40 Cal.App.4th 1571, 1582, 47 Cal.Rptr.2d 752, 758 (1995) (*quoting* 1 Levy, Golden and Sacko, California Torts, ch. 9, § 9.03(2) at 9–12 (1995).) The Court's ruling on the breach of contract claim necessarily requires that summary judgment be granted for Provident on this claim. There can be no liability for conspiring to deny benefits that are not due to Damascus under the policy.

### 4.

Damascus' sixth claim alleges that Provident fraudulently delayed or denied benefits to which he is entitled under the policy. (Compl. ¶¶ 31–33.) Damascus' seventh claim alleges that defendants made various errors and omissions that may have the effect of denying or diminishing the benefits to which Damascus is entitled under the policy. (*Id.* ¶¶ 34–36.) Because the Court has held that there is no triable issue of fact as to whether benefits are due under the policy, summary judgment must be granted for Provident on these claims.

### 5.

Damascus' eighth claim for negligent and intentional infliction of emotional distress alleges that he suffered emotional and mental distress and anguish as a result of Provident's delay or failure in making payments to Damascus as required under the policy. (*Id.* ¶¶ 37–39.) Again, because there is no triable issue of fact as to whether benefits are due under the policy, summary judgment must be granted for Provident on these claims.

### D.

LaMarca, the Provident agent or broker who signed Damascus' application for insurance in 1980, did not move for summary judgment and did not join in Provident's motion. Indeed, it appears that LaMarca has never been served in this action. All allegations against LaMarca are necessarily resolved by this Court's ruling granting summary judgment for Provident. There are no independent allegations against LaMarca; all of Damascus' claims against LaMarca are in her capacity as agent of Provident. Because the Court grants summary judgment for Provident on all claims, there can be no liability for LaMarca either.

■ "[W]hen the only issues to be decided in the case are issues of law, summary judgment may be granted." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2725 at 79 (2d ed. 1983) (footnote omitted). Moreover, the Court may grant summary judgment *sua sponte* in favor of a party that has not moved for summary judgment if "the party against whom the judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted." *Id.,* § 2720 at 27–28 (footnote omitted). Given that it does not appear that LaMarca can be liable on any grounds independent of Provident, Damascus had notice and an opportunity to show why summary judgment should not be granted in favor of LaMarca. Moreover, any actionable activities by LaMarca may have been attributable to Provident under the doctrine of *respondeat superior;* thus, Damascus had incentive

894

to itemize them in his opposition to Provident's motion.

The Court grants summary judgment for LaMarca, *sua sponte,* on all claims.

### III.

Accordingly,

IT IS HEREBY ORDERED that:

1. Provident's motion for summary judgment is GRANTED on all causes of action.

2. The Court, *sua sponte,* GRANTS summary judgment for LaMarca on all causes of action.

3. This action is dismissed with prejudice.